WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
: 
In re : Chapter 11
: 
ENRON CORP., ET AL., : Case No. 01-16034 (____)
: 
: Jointly Administered
Debtors. :
--------------------------------------------------------------- x

**AFFIDAVIT OF BRIAN S. ROSEN AND DISCLOSURE STATEMENT
ON BEHALF OF WEIL, GOTSHAL & MANGES LLP PURSUANT TO 11
U.S.C. §§ 327(a), 328(a), 329 AND 504 AND FEDERAL RULES OF BANKRUPTCY
PROCEDURE 2014(a) AND 2016(b) IN SUPPORT OF APPLICATION OF
DEBTORS FOR ORDER AUTHORIZING EMPLOYMENT AND RETENTION
OF WEIL, GOTSHAL & MANGES LLP AS ATTORNEYS FOR THE DEBTORS**

STATE OF TEXAS )
 ) ss:
COUNTY OF HARRIS )

BRIAN S. ROSEN, being duly sworn, deposes and says:

1. I am a member of the firm of Weil, Gotshal & Manges LLP ("WG&M" or the "Firm"), an international law firm with principal offices at 767 Fifth Avenue, New York, New York 10153; regional offices in Houston and Dallas, Texas, Washington, D.C., Miami, Florida, and Redwood Shores, California; and international offices in London, United Kingdom, Frankfurt, Germany, Budapest, Hungary, Warsaw, Poland, Brussels, Belgium, and Prague, The Czech Republic. I am resident in the Firm's New York office.

2. I submit this affidavit in connection with the application of Enron Corp. and certain of its affiliates, as debtors in possession (collectively, the "Debtors"), for authorization to employ WG&M as their attorneys in the above-captioned chapter 11 cases and in compliance with sections 327(a), 328(a), 329 and 504 of title 11 of the United States Code (the "Bankruptcy Code"), as well as to provide disclosure required under Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein. To the extent that any information disclosed herein requires amendment or modification upon WG&M's completion of further analysis or as additional creditor information becomes available to it, a supplemental affidavit will be submitted to the Court reflecting such amended or modified information.

4. Neither I, WG&M, nor any member of, associate of, or of counsel to the Firm represents any entity (or its attorneys or accountants) other than the Debtors in connection with the Debtors' chapter 11 cases. In addition, except as set forth herein, to the best of my knowledge, after due inquiry, neither I, WG&M, nor any member of, counsel to, or associate of the Firm represents any party in interest (or its attorneys or accountants) in these chapter 11 cases in matters unrelated to the Debtors' chapter 11 cases.

5. Certain interrelationships exist among the Debtors. Nevertheless, the Debtors have advised WG&M that the Debtors' relationships to each other do not pose any conflict of interest because of the general unity of interest among the Debtors. Insofar as I have been able to ascertain, I know of no conflict of interest that would preclude WG&M's joint representation of the Debtors in these cases.

6. WG&M is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code in that WG&M, its members, counsel, and associates:

    a. are not creditors or insiders of the Debtors;

    b. are not and were not investment bankers for any outstanding security of the Debtors;

    c. have not been, within three years before the date of this affidavit, (i) investment bankers for a security of the Debtors, or (ii) an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the Debtors;

    d. are not and were not, within two years before the date of this affidavit, a director, officer, or employee of the Debtors or any investment banker as specified in subparagraph (b) or (c) of this paragraph; and

    e. has certain relationships with certain creditors, other parties in interest, and other professionals in connection with unrelated matters, but has not

represented any such party in connection with matters relating to the Debtors, except as set forth herein.

7. In October 2001, WG&M was engaged to advise the Debtors in connection with strategic alternatives and financial restructuring and bankruptcy matters. In that regard, WG&M represented Enron Corp. in connection with its attempted merger with Dynegy. Thereafter, upon termination of the merger, WG&M became primarily responsible for the preparation of the chapter 11 petitions for the Debtors and the initial motions, applications, and affidavits relating to these chapter 11 cases. Additionally, WG&M represents certain of the Debtors and their affiliated non-debtor entities in other non-bankruptcy related matters.

8. WG&M is not a creditor of the Debtors. Within the year prior to the commencement of the Debtors' chapter 11 cases, WG&M received payment from the Debtors of approximately $3.4 million for professional services rendered and expenses incurred by WG&M prior to the date hereof. In addition, WG&M currently holds a retainer of approximately $4 million for payment of professional services to be rendered and expenses to be incurred with respect to these chapter 11 cases.

9. WG&M has in the past represented, currently represents, and may in the future represent entities that are claimants or interest holders of the Debtors in matters totally unrelated to the Debtors' pending chapter 11 cases. WG&M, which employs over 1,000 attorneys, has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations, some of which are or may consider themselves to be creditors or parties in interest in the Debtors' pending chapter 11 cases or to otherwise have interests in these cases.

## **WG&M Disclosure Procedures**

10. In preparing this affidavit, I used a set of procedures developed by WG&M to ensure full compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and any local rules of the Court regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Firm Disclosure Procedures"). Pursuant to the Firm Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this affidavit and to ascertain WG&M's connection to such parties:

    a. Using information provided by the Debtors, and additional information identified by WG&M, a list of the names of entities who may be parties in interest to these chapter 11 cases (the "Potential Parties In Interest") was assembled.

    b. WG&M then compared each of the Potential Parties In Interest to the names that WG&M has compiled into a master client database from its conflict clearance and billing records, comprised of the names of the entities for which any attorney time charges have been billed since the database was first created approximately nineteen years ago (the "Client Database"). The Client Database includes the name of each current or former client, the name of the parties who are or were related or adverse to

  such current or former client, and the names of the WG&M personnel who are or were responsible for current or former matters for such client.

  c. Any matches between the Client Database and the list of Potential Parties In Interest were identified (the "Client Match List"), together with the names of the respective WG&M personnel responsible for current or former matters for the entities on the Client Match List.

  d. An attorney then reviewed the Client Match List and deleted obvious name coincidences and entities that were adverse to WG&M's client in both this matter and the matter referenced on the Client Match List. The remaining client connections with regard to which WG&M had represented the client within the last two years were compiled for purposes of this Affidavit.

  11. In addition to the foregoing, a general inquiry to all WG&M personnel was sent by e-mail to determine whether (i) any such individuals held any securities of or claims against the Debtors and (ii) any such individuals were ever employed by the Debtors. In response to this e-mail, the following relationships between WG&M personnel and the Debtors were ascertained: (a) the mother of Melanie Gray (a member of the Firm and one of the lead attorneys in these cases) holds stock in the Debtors; (b) Susman Godfrey LLP, the law firm in which Melanie Gray's husband is a partner, represents Enron Corp. in a number of securities actions filed against it; (c) the husband and brother-in-law of Sylvia Baker, of counsel working on these chapter 11 cases, are employed by the Debtors; and (d) several WG&M lawyers and support staff and/or their family members hold stock in the Debtors and/or are or were employed by the Debtors or one of their affiliated entities. It should be noted that WG&M has a long-standing policy prohibiting all lawyers and support staff from using confidential information that may come to their attention in the course of their work. In this regard all personnel are barred from trading in securities with respect to which they possess confidential information.

### WG&M's Connections with Parties in Interest in Matters
### Unrelated to the Chapter 11 Case

  12. Following the foregoing procedures, the remaining entities in the Client Match List in which WG&M had represented the client within the last two years was reviewed by an attorney working under my supervision and from such review it was determined that, in respect of each connection between WG&M and such parties, WG&M does not hold or represent an interest that is adverse to the Debtors' estate, and that WG&M is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code for the reasons discussed below.

  13. WG&M previously has represented, currently represents, and may represent in the future the entities described below (or their affiliates), in matters totally unrelated to the Debtors. The following lists are the product of implementing the Firm Disclosure Procedures described above and are based on the relationship of the indicated entities with the Debtors, arranged under the following categories: (a) the Debtors and their affiliates, (b) officers and directors of the Debtors, (c) professionals representing the Debtors and other parties in interest, (d) secured creditors, (e) the Debtors' lenders, (f)

the twenty largest unsecured non-insider creditors of each Debtor, (g) 5% stockholders of each of the Debtors, (h) indenture trustees, (i) principal landlords of the Debtors and (j) other potentially adverse parties in interest.

    a.    <u>The Debtors and their Non-Debtor Affiliates</u>.  WG&M has not represented the Debtors or their non-Debtor affiliates in any capacity that was adverse or potentially adverse to the Debtors.

    b.    <u>Officers or Directors.</u>  WG&M has not represented any of the Debtors' officers or directors.

    c.    <u>Professionals Representing the Debtors and Other Parties in Interest</u>.  As a routine part of its practice, WG&M appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, real estate consultants and investment bankers, including other professionals representing the Debtors and other parties in interest. In certain instances, such professionals may be direct clients of WG&M. For example, WG&M has represented and continues to represent Deloitte & Touche LLP (accountants for the Special Committee of the Board of Directors) and Arthur Andersen (the Debtors' prepetition accountants) in matters unrelated to these chapter 11 cases. WG&M has been both aligned with and adverse to Deloitte & Touche LLP and Arthur Andersen in a number of matters unrelated to these cases.

        In addition, the Debtors have hired a number of professionals in the ordinary course of their businesses.  WG&M does not represent and has not represented any of the Debtors' ordinary course professionals in connection with these chapter 11 cases.  However, of the professionals that provide a significant amount of legal services to the Debtors, each of the following entities may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, or (3) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases.  Moreover, WG&M may currently represent and in the past may have represented clients adverse to the parties listed in this paragraph.  The ordinary course professionals with which WG&M may have a relationship are:  Allen & Overy; Arent Fox Kintner Plotkin & Kahn; Baker & Botts LLP; Bingham Dana; Davis Wright Tremaine LLP; Figueroa Sierra & Asociados; Filteau Sullivan & O'Rourke P.C.; Foley & Lardner; Fulbright & Jaworski; Gibson Dunn & Crutcher LLP; Gorrissen Federspiel Kierkegaard; Gowling Lafleur Henderson LLP; Hahn Loeser Parks LLP; Holland & Knight LLP; Kim & Chang; Kirkland & Ellis; Mayer Brown & Platt; Mayor Day Caldwell & Keeton; McDermott Will & Emery; Milbank Tweed Hadley & McCloy; Morrison & Foerster LLP; Olser Hoskin & Harcourt LLP; O'Melveny & Myers LLP; Piper Marbury

Rudnick & Wolfe; Poten & Partners Inc.; Simmons & Simmons; Stikeman Elliot; Sutherland Asbill & Brennan LLP; and Trenite Van Doorne.

In addition, the Debtors employ the law firm of Rajah & Tann in the ordinary course of their businesses. WG&M has a professional affiliation with this Singapore firm.

WG&M has not and will not represent any of the aforementioned parties, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases.

d. Secured Creditors. WG&M does not represent and has not represented any of the Debtors' secured creditors in connection with these chapter 11 cases.

e. The Debtors' Lenders. WG&M does not represent and has not represented any of the Debtors' lenders in connection with these chapter 11 cases. However, each of the entities listed in this paragraph and/or their affiliates may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, (3) a separate affiliate of clients who are or were represented by WG&M in matters unrelated to these cases, (4) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases, (5) a separate affiliate of former or current clients of WG&M in matters unrelated to these cases, or (6) a member of committees of groups in which WG&M has represented the committee or group as a whole, or in part. Moreover, WG&M may currently represent and in the past may have represented clients adverse to the parties listed in this paragraph and/or their affiliates. The lenders with which WG&M may have relationships are: ABN Amro Bank, Ltd.; AIG Global Investment Corp.; ANZ Investment Bank; Allied Irish Bank; American Express Bank; BNP-Paribas; BSCH-Banco Santander; Banco Espirito Santo; Bank Austria Creditanstalt; Bank One Capital Markets; Bank Polska Kasa Opieki, S.A.; Bank of America; Bank of Montreal; Bank of New York; Bank of Nova Scotia; Bank of Scotland; Bank of Tokyo-Mitsubishi Ltd.; Barclays Bank PLC; Bayerische Hypo-Und Vereinsbank; Bayerische Landesbank; Bear, Stearns & Co., Inc.; CIBC Oppenheimer; Citigroup—Salomon Smith Barney; Comerica Inc.; Commerzbank; Credit Agricole Indosuez; Credit Local de France (Dexia); Credit Lyonnais; Credit Suisse First Boston; DG Bank; De Nationale Inversteringsbank N.V. (DNIB); Den Danske Bank Aktieselskab; Deutsche Banc Alex Brown; Development Bank of Singapore; Donaldson, Lufkin & Jenrette; Dresdner Kleinwort Wasserstein/Allianz; Erste Bank; Export Import Bank; Fleet Boston Financial; Fortis Bank; GE Capital; Goldman Sachs & Co.; HSBC; Hitachi Credit America; ING Bank

(BBL/BHF); JP Morgan Chase; John Hancock Advisors/Mutual Life Insurance Company; KBC-Bank; Key Bank (formerly Society National Bank); Lehman Brothers, Inc.; Lloyd's; Merrill Lynch Capital Markets; Merrill Lynch Insurance Group, Inc.; Midland Bank PLC; Mizuho Financial Group (DKB); Mizuho Financial Group (Fuji); Mizuho Financial Group (IBJ); Morgan Stanley; Natexis Banque; National Australia Bank, Ltd.; National Bank of Canada; Nordea Bank (formerly Christiania, Merita, Nordbanken and Unibank); Northern Trust Bank; Norwich Union; Overseas Private Investment Corporation (OPIC); Prudential Capital Group; Prudential Insurance Company of America; RZB Finance; Rabobank Nederland; Royal Bank of Canada; Royal Bank of Scotland; Sanwa Bank Limited; Societe Generale; St. Paul Fire and Marine; Standard Chartered Bank; Sumitomo Mitsui Banking Corp.; Sumitomo Trust & Banking Co.; Suntrust Bank; TD Securities; Toyo Trust and Banking Co., Ltd.; UBS Warburg; US Bank; USAA Investment Management; Unicredito Italiano; Union Bank of California; Wachovia Bank; Washington Mutual; Wells Fargo Bank (Texas), N.A.; Westdeutsche Landesbank; and Wilmington Trust Company. WG&M has not and will not represent any of the aforementioned lenders, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases.

    f.    <u>Twenty Largest Unsecured Creditors</u>. WG&M does not represent and has not represented any of the Debtors' twenty largest unsecured non-insider creditors in connection with these chapter 11 cases.[1] WG&M will file a supplemental affidavit disclosing its relationships, if any, with additional creditors identified since November 28, 2001. However, each of the entities listed in this paragraph and/or their affiliates may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, (3) a separate affiliate of clients who are or were represented by WG&M in matters unrelated to these cases, (4) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases, (5) a separate affiliate of former or current clients of WG&M in matters unrelated to these cases, or (6) a member of committees of groups in which WG&M has represented the committee or group as a whole, or in part. Moreover, WG&M may currently represent and in the past may have represented clients adverse to the parties listed in this paragraph and/or their affiliates. The unsecured creditors with whom WG&M may have relationships are: CAP Gemini Ernst & Young US LLC; Conoco, Inc.; Dow Chemical Company; E.I.

---

[1] With regard to creditors identified as of November 28, 2001, WG&M does not represent and has not represented any of the Debtors' twenty largest unsecured non-insider creditors in connection with these chapter 11 cases. WG&M will file a supplemental affidavit disclosing its relationships, if any, with additional creditors identified since November 28, 2001.

DuPont de Nemours and Co.; Itochu Petroleum Co.; Northeast Utilities Service Company; SAP America, Inc.; Shell Chemical Co.; Shell U.K. Oil; Statoil Energy Trading Inc.; and Tosco Refining Company. WG&M has not and will not represent any of the aforementioned creditors, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases.

g.  Debtors' 5% Stockholders. WG&M does not represent and has not represented any of the Debtors' 5% stockholders in connection with these chapter 11 cases. However, AXA Financial, Inc. and/or its affiliates may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, (3) a separate affiliate of clients who are or were represented by WG&M in matters unrelated to these cases, (4) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases, (5) a separate affiliate of former or current clients of WG&M in matters unrelated to these cases, or (6) a member of committees of groups in which WG&M has represented the committee or group as a whole, or in part. Moreover, WG&M may currently represent and in the past may have represented clients adverse to AXA Financial, Inc. and/or its affiliates. WG&M has not and will not represent AXA Financial, Inc., or any of its affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases.

h.  Indenture Trustees. WG&M does not represent and has not represented any of the Debtors' indenture trustees in connection with these chapter 11 cases. However, Harris Trust and Savings Bank and Bank of New York and/or their affiliates may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, (3) a separate affiliate of clients who are or were represented by WG&M in matters unrelated to these cases, (4) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases, (5) a separate affiliate of former or current clients of WG&M in matters unrelated to these cases, or (6) a member of committees of groups in which WG&M has represented the committee or group as a whole, or in part. Moreover, WG&M may currently represent and in the past may have represented clients adverse to the parties listed in this paragraph and/or their affiliates. WG&M has not and will not represent any of the aforementioned parties, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases.

i.  Principal Landlords. WG&M has not represented any of the Debtors' landlords in any capacity that was adverse or potentially adverse to the Debtors.

j. <u>Other Significant Relationships</u>. WG&M does not represent and has not represented any other significant parties in interest in connection with these chapter 11 cases. However, each of the entities listed in this paragraph and/or their affiliates may be considered to be (1) a former client of WG&M in matters unrelated to these cases, (2) a current client of WG&M in matters unrelated to these cases, (3) a separate affiliate of clients who are or were represented by WG&M in matters unrelated to these cases, (4) a party in interest in litigation brought by or against former or current clients of WG&M in matters unrelated to these cases, (5) a separate affiliate of former or current clients of WG&M in matters unrelated to these cases, or (6) a member of committees of groups in which WG&M has represented the committee or group as a whole, or in part. Moreover, WG&M may currently represent and in the past may have represented clients adverse to the parties listed in this paragraph and/or their affiliates. The other parties with which the Debtors have relationships and WG&M has or may have a relationship are: AEP; Bethlehem Steel; Duke Energy; BP Amoco; El Paso Energy; General Electric; Chevron/Texaco; LTV; Pacific Gas & Electric Company; Polaroid Corp.; Owens Corning; and Rhythms NetConnections.

In particular, WG&M has represented and currently represents PG&E Corporation in connection with, among other things, PG&E Corporation's role as a co-proponent of the chapter 11 plan of reorganization for PG&E Corporation's subsidiary, Pacific Gas & Electric Company. Enron is a former member of the unsecured creditors' committee of Pacific Gas & Electric Company. WG&M has also represented PG&E Corporation in connection with other matters and has represented its affiliate PG&E National Energy Group ("PG&E NEG").

Enron and WG&M have agreed that WG&M may continue to represent PG&E Corporation and PG&E NEG, including in connection with the Pacific Gas & Electric Company chapter 11 case, in which Enron may have an adverse interest. WG&M will not advise Enron in any manner as to claims that PG&E Corporation may have against Enron or that Enron may have against PG&E. In addition, WG&M will not represent Enron with respect to: (1) Public Utility Holding Act issues; (2) Federal Energy Regulatory Commission issues; (3) California Public Utility Commission issues; and (4) taking the legal position that any trading agreement substantially similar to trading agreements between Enron and PG&E is outside the scope or not governed by the provisions of section 560 of the Bankruptcy Code. In each of the foregoing instances, the Debtors shall utilize the services of special or co-counsel.

Furthermore, no WG&M attorney who has in the past, does currently, or will in the future advise PG&E Corporation or any of its affiliates will

advise Enron with respect to any matter, except (i) any attorney who devoted less than 50 hours of time to the representation of PG&E Corporation and (ii) Glenn D. West, Jay Tabor, Paul Asofsky, Charles Harrell, Mary Jean Potenzone, Jeffrey Gleit, Patricia Lindloff, Dawn Stout, Katharine Caplan, Kelli Walsh and John Tobola, each of whom will advise Enron and, to the extent requested by PG&E Corporation, continue to advise PG&E on matters unrelated to any claim by Enron against PG&E or its affiliates.

WG&M represents the Statutory Committee of Unsecured Creditors of Costilla Energy, Inc. (the "Committee") in the chapter 11 case of Costilla Energy, Inc. ("Costilla"). Costilla has emerged from chapter 11. In connection with Costilla's plan of reorganization, George G. Hicks, chairman of the Committee, was appointed Litigation Trustee to pursue causes of action on behalf of the Debtor's estate. On August 31, 2001, Mr. Hicks, in his capacity as Litigation Trustee, filed a lawsuit in Zapata County, Texas against Enron and certain of its affiliated entities on behalf of Costilla's bankruptcy estate. Mr. Hicks has retained separate counsel to represent him in such litigation.

Because Enron is a very large corporation and because claims are bought and sold on a daily basis, there is a possibility that present or former clients of WG&M hold claims against or have rendered services to Enron without WG&M being aware of same. Therefore, out of an abundance of caution, WG&M is disclosing herein the names of certain present or former clients of WG&M who may become involved in these cases as debt or equity holders or professionals without WG&M being contemporaneously aware of same. WG&M has represented or is representing in unrelated matters Ernst & Young, LLP, KPMG Peat Marwick, and Arthur Andersen. WG&M has in the past and may now represent certain entities that sometimes buy, sell or invest in distressed assets or securities, including, without limitation: Goldman Sachs, Lehman Brothers, Perry Corporation, Leucadia Corporation, Deutsche Bank, Elliott Associates, Whipporwill Associates, Bay Harbour Management, Argent Classic Fund, Angelo Gordon, McKay Shields, Morgens Waterfall, and Vintiadis & Co.

WG&M has not and will not represent any of the aforementioned parties, or any of their respective affiliates or subsidiaries, in relation to the Debtors or their chapter 11 cases. To the extent that the Debtors should find themselves in a position adverse to any of the parties with whom WG&M has a relationship unrelated to these cases, WG&M has advised the Debtors they may need to retain separate counsel to pursue any adverse action against such parties.

### WG&M's Rates and Billing Practices

14. WG&M's current customary hourly rates, subject to change from time to time, are $410-700 for members and counsel, $200-450 for associates and $50-175 for paraprofessionals in our United States offices.

15. No promises have been received by WG&M or any member, counsel or associate thereof as to payment or compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code. WG&M has no agreement with any other entity to share with such entity any compensation received by WG&M or by such entity.

16. The Debtors' Application requests, pursuant to Bankruptcy Code section 328(a), approval of their retention of WG&M on terms and conditions WG&M charges non-title debtors, namely, prompt payment of its hourly rates as adjusted from time to time and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, WG&M intends to apply for compensation for professional services rendered in these chapter 11 cases and for reimbursement of actual and necessary expenses incurred in connection therewith, in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules and orders of the Court.

17. The foregoing constitutes the statement of WG&M pursuant to sections 327(a), 328(a), 329 and 504 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Bankruptcy Rules.

/s/ Brian S. Rosen
Brian S. Rosen
A Member of the Firm

STATE OF HARRIS            )
                           )     ss:
COUNTY OF HARRIS           )

        Subscribed to and sworn to before me, a notary public for the State and City aforesaid on this _____ day of _____, 2001

        /s/ LaRae Lankford
        Notary Public

        My Commission Expires: March 4, 2005