WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re : **Chapter 11**
: 
**ENRON CORP., ET AL.,** : Case No. 01-16034 (____)
: 
: **Jointly Administered**
Debtors. :
-------------------------------------------------------------- x

**APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a)
AND 328(a) OF THE BANKRUPTCY CODE FOR AUTHORIZATION
TO EMPLOY THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISORS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Enron Corp. and certain of its affiliated debtor entities (collectively, the "Debtors"), as debtors and debtors in possession, file this Application and respectfully submit as follows:

**Jurisdiction**

1. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On December 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code").

The Debtors continue to be authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. The Debtors and their approximately 3,500 other direct and indirect subsidiaries (collectively, the "Enron Companies"), building upon knowledge gained in over 70 years of experience in the energy business, have grown into a worldwide leader in products and services related to the sale and delivery of natural gas, electricity and communications to wholesale and retail customers. As of the Petition Date, the Enron Companies employed approximately 25,000 individuals throughout the world and were recently ranked seventh on the Fortune 500 list of the largest U.S. corporations.

4. For the fiscal year ended December 31, 2000, the Enron Companies generated $101 billion in annual revenues on a consolidated basis. As set forth in the Enron Companies' Form 10-Q filed on October 31, 2001 (the "10-Q") for the quarter ending on September 30, 2001, the Enron Companies' consolidated books and records reflected assets totaling approximately $61 billion and liabilities totaling approximately $49 billion.[1]

5. The Enron Companies divide their business operations into four primary business units: Enron Wholesale Services, Enron Retail Services, Enron Transportation Services, and Enron Global Services. These business units provide the following services:

    (a) Enron Wholesale Services encompasses the global wholesale businesses related to natural gas, power, metals, coal, crude and liquids, weather, forest products and steel. This business unit also includes EnronOnline$^{TM}$, the world's largest e-commerce site for global commodity transactions.

    (b) Enron Retail Services extends Enron's energy expertise and capabilities to end-use retail customers in the industrial and commercial business sectors to manage their energy requirements and reduce their total energy costs.

---

[1] As indicated in the 10-Q, the numbers set forth above are unaudited.

(c) Enron Transportation Services operates one of the largest gas transmission systems in the United States spanning approximately 25,000 miles with a peak capacity of 10.1 billion cubic feet per day.

(d) Enron Global Services includes energy-related assets throughout the world that are not included in the Wholesale, Retail and Transportation business units, including, but not limited to, assets in the United States, Brazil, Europe, and India.

6. On October 16, 2001, Enron Corp. issued a press release announcing its results for the three months ended September 30, 2001 (the "Third Quarter Earnings Release"). Although the release disclosed that Enron Corp.'s total recurring net income increased to $393 million dollars, as compared to $292 million dollars for the comparable period the prior year, the release also disclosed non-recurring charges totaling $1.01 billion dollars (after tax). In addition, in connection with the early termination of certain structured finance arrangements, it was also publicly reported that Enron's shareholders' equity had been reduced by approximately $1.2 billion.

7. During the period from October 15, 2001 up to and including Enron Corp.'s execution of an Agreement and Plan of Merger, by and among Dynegy, Inc. ("Dynegy") and certain of its subsidiaries (the "Merger Agreement") on November 9, 2001, there was a sharp decrease in the price of Enron Corp.'s common stock. During the same period, Enron's creditors and trading counterparties continued to question the Enron Companies' financial credibility and each of the three primary rating agencies, Standard & Poor's, Moody's and Fitch, had continuous discussions with Dynegy and Enron regarding the impact of the proposed merger on Enron's financial condition.

8. On November 9, 2001, in an effort to improve their liquidity and restore shareholder, customer and vendor confidence, the Debtors and certain of their affiliates entered into the Merger Agreement, whereby the Debtors agreed to merge with and into Dynegy. Under

the terms of the Merger Agreement, Dynegy agreed to acquire the Debtors for approximately $9,000,000,000 in Dynegy stock and assume approximately $13,000,000,000 in debt. Concurrently therewith, the Debtors, the Northern Natural Gas Company, an indirect subsidiary of Enron Corp. ("Northern Natural"), and Dynegy entered into a Subscription Agreement whereby Dynegy purchased $1,500,000,000 of preferred stock of Northern Natural.

9. Soon after entering into the Merger Agreement, a number of events occurred involving Dynegy that are the subject of litigation. Ultimately, Dynegy advised the Debtors that it was terminating the Merger and then on the morning of November 28, 2001, Standard & Poor's, Moody's, and Fitch each downgraded Enron's credit rating to speculative or "junk" status.

**Retention of The Blackstone Group, L.P.**

10. Subject to approval of this Court, the Debtors have employed The Blackstone Group, L.P. ("Blackstone") as their financial advisors in connection with their chapter 11 cases. Pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the employment of Blackstone, under a general retainer, to provide financial and restructuring advisory services and other related services that will be necessary during these chapter 11 cases at fees set out in an agreement between Blackstone and the Debtors (the "Blackstone Agreement"). Pursuant to section 328(a), the Debtors can retain Blackstone pursuant to any reasonable terms and conditions. The Debtors believe the fees and disbursement policies Blackstone charges and implements on a daily basis in a competitive national market for financial and restructuring advisory services are inherently reasonable and agree to pay Blackstone according to those terms.

11. The Debtors are in the process of formulating their year business plan. In conjunction with the business plan process, a reorganization plan will be promulgated, which

will require analysis of enterprise valuation, debt capacity, and the types of equity securities to be issued as part of that reorganization plan. Thus, the Debtors have concluded that they require the services of a financial advisor in order to fulfill their fiduciary duty and explore all options available, thereby maximizing value.

12. The Debtors have selected Blackstone as their financial advisors because of the firm's recognized expertise in providing financial advisory services in financially distressed situations, including advising debtors, creditors and other constituents in Chapter 11 proceedings and serving as investment bankers in numerous such cases. Blackstone was retained by the Debtors pre-petition to assist the Debtors in the evaluation of strategic alternatives. Since November 21, 2001, Blackstone has rendered financial advisory services to the Debtors in connection with their restructuring efforts. Blackstone has become familiar with the Debtors' operations and is both well-qualified and uniquely able to represent the Debtors as financial advisors in connection with such matters in a cost-effective and efficient manner.

13. Blackstone is uniquely qualified to advise the Debtors in connection with maximizing the Debtors' business enterprise value in these chapter 11 cases, and its professionals have extensive experience in matters involving complex financial restructurings. Blackstone is a preeminent financial and restructuring advisor, with a reputation for creativity in complex situations. Blackstone and/or its principals have been involved as restructuring/bankruptcy advisors to a diverse group of debtors, creditors, bondholders, and creditors' committees in chapter 11 cases of many companies, including, among numerous others, The Singer Company, N.V., The Caldor Corporation, The Leslie Fay Companies, Texaco, JPS Textile Group, Inc., Alliance Entertainment, Barney's Inc., Levitz Furniture, Inc., Montgomery Ward Holding Co., and R.H. Macy & Co., Inc. In addition, it has extensive

experience working on cases involving financially troubled foreign companies and companies with foreign exposures, including, Dow Corning Corp. (Asia/Europe), American Banknote Corp. (Brazil), Guandong Enterprises (China), and Iridium (Asia/Europe/Africa/South America).

14. The services of Blackstone are necessary to enable the Debtors to execute faithfully their duties as debtors and as debtors-in-possession. The Debtors have negotiated the terms of an engagement letter, which sets forth the services that Blackstone will provide to the Debtors, as well as the manner in which Blackstone will be compensated for their services. Subject to further order of the Court, Blackstone will be engaged to render the following professional services:

    a. Assist in the evaluation of the Debtors' businesses and prospects;

    b. Assist in the development of the Debtors' long-term business plan;

    c. Assist in the development of financial data and presentations to the Debtors' Boards of Directors, various creditors, any official committees formed in a Chapter 11 proceeding, other and third parties;

    d. Analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

    e. Analyze various restructuring scenarios and the potential impact of these scenarios on the value of the Debtors and the recoveries of those stakeholders impacted by the Restructuring;

    f. Provide strategic advice with regard to restructuring or refinancing the Debtors' Obligations;

g. Evaluate the Debtors' debt capacity and alternative capital structures;

h. Participate in negotiations among the Debtors and their creditors, suppliers, lessors and other interested parties with respect to any of the transactions contemplated in the Blackstone Agreement;

i. Value securities offered by the Debtors in connection with a restructuring;

j. Advise the Debtors and negotiate with lenders with respect to potential waivers or amendments of various credit facilities;

k. Assist in the arranging of Financings (including a DIP Financing), including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed Financing, as requested;

l. Assist the Debtors in evaluating and executing both a Trading Transaction and a Merger Transaction, including identifying potential buyers or parties in interest, assisting in the due diligence process, and negotiating the terms of any proposed Trading Transaction or Merger Transaction, as requested;

m. Provide testimony in any Chapter 11 case concerning any of the subjects encompassed by Blackstone's financial advisory services, if appropriate and as required;

n. Assist and advise the Debtors concerning the terms, conditions and impact of any transaction proposed by Blackstone; and

o. Provide such other advisory services as are customarily provided in connection with the analysis and negotiation of any transactions.

15. It is necessary that the Debtors employ accountants, restructuring consultants and financial advisors under a general retainer to render the foregoing professional services. Services provided by Blackstone are not duplicative in any manner with the services provided by any other financial advisors or accountants employed by the debtors. Blackstone and all the Debtors' financial advisors and accountants will undertake every reasonable effort to avoid any duplication of services.

16. Blackstone has stated its desire and willingness to act in these cases and to render the necessary professional services as financial advisors for the Debtors.

17. To the best of the Debtors' knowledge, information and belief, other than in connection with these cases, Blackstone has no connection with, and holds no interest adverse to, the Debtors, their estates, their creditors, or any other party in interest herein, or their respective attorneys, in the matters for which Blackstone is proposed to be retained, except that: (i) prior to the commencement of the Debtors' cases, Blackstone rendered financial advisory services to the Debtors (the "Prepetition Services"), and (ii) Blackstone may have provided consulting services, and may continue to provide consulting services, to certain of the Debtors' creditors or other parties in interest in matters unrelated to the Debtors' chapter 11 cases, as disclosed in the affidavit of Steven Zelin, a partner of Blackstone, sworn to on the 2nd day of December, 2001 (the "Zelin Affidavit"), annexed hereto as Exhibit "A." In Blackstone's opinion, this has no bearing on the services for which Blackstone is to be retained in these cases.

18. Blackstone is a "disinterested person," as defined in section 101(14) and as required by section 327(a) of the Bankruptcy Code. The Zelin Affidavit, executed on behalf

of Blackstone in accordance with section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), is filed contemporaneously herewith and incorporated herein by reference. The Debtors' knowledge, information and belief regarding the matters set forth in this application are based, and made in reliance upon, the Zelin Affidavit.

19. Prior to the filing of these cases, the Debtors paid Blackstone approximately $1,300,000 in the aggregate for the Prepetition Services rendered and expenses related thereto. As of the Petition Date, approximately $25,000 of expense retainer remained for application to services provided to the Debtors postpetition.

20. Blackstone intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Civil Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

21. The Debtors, subject to the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, propose to pay Blackstone in accordance with its customary hourly rates and disbursement policies.

22. Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Application, the Zelin Affidavit, or the proposed services to be provided hereunder (including any such matter involving parents, subsidiaries, affiliates, successors in interest or agents of the Debtors and any member of Blackstone) shall be brought in the Bankruptcy Court or the District Court for the District of Delaware if such District Court withdraws the reference, and the parties to this Application, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole and exclusive

forum (unless such court does not have or retain jurisdiction over such claims or controversies) for the resolution of such claims, causes of actions or controversies. The parties to this Application, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court or the District Court (if the reference is withdrawn) does not have or retain jurisdiction over the foregoing claims and controversies, the parties to this Application, and any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit "C" to this Application. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon Blackstone, the Debtors and any and all successors and assigns thereof.

23. Blackstone agrees not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to the jurisdiction and venue of the Bankruptcy Court or the District Court for the Southern District of New York (if such District Court withdraws the reference) to hear or determine any controversy or claims with respect to, in connection with, arising out of, or in any way related to this Application, the Zelin Affidavit, or the services proposed to be provided hereunder.

24. The appointment of Blackstone on the terms and conditions set forth herein is necessary, essential, and in the best interest of the estates of the Debtors and should be approved.

25. In the event that any affiliates of the Debtors subsequently commence chapter 11 cases, which cases are jointly administered with these cases, the Debtors request that the relief requested herein apply to such debtors and their respective estates. Blackstone agrees

to file such additional declaration as necessary pursuant to sections 327(e) and 328(a) of the Bankruptcy Code with regard to such debtors and their respective estates.

## NOTICE

26. As of the filing of this Application, no trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Application has been given via facsimile, hand delivery, or overnight mail to the United States Trustee, each of the Debtors' twenty largest unsecured non-insider creditors, the Securities and Exchange Commission, the United States Attorney's Office, the United States Attorney General, the Internal Revenue Service, and the Debtors' proposed debtor in possession lenders  Because of the exigencies of the circumstances and the irreparable harm to the Debtors, their estates, and all parties in interest that will ensue if the relief requested herein is not granted, the Debtors submit that no other notice need be given.

27. Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Application.

28. No previous application for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request that the Court enter an order granting the relief requested herein, and such other and further relief as may be just.

Dated: New York, New York
       December 3, 2001

                                            Respectfully submitted,

                                            By:   /s/ Brian S. Rosen
                                                     Martin J. Bienenstock (MB 3001)

Brian S. Rosen (BR 0571)
Melanie Gray
Martin A. Sosland
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------x
                                    :
In re                               :    Chapter 11
                                    :
ENRON CORP., ET AL.,                :    Case No. 01-16034 (____)
                                    :
                                    :    Jointly Administered
                  Debtors.          :
-------------------------------------------------------x
```

## ORDER PURSUANT TO BANKRUPTCY CODE SECTION 328(a) AUTHORIZING EMPLOYMENT OF THE BLACKSTONE GROUP, L.P. AS FINANCIAL ADVISOR TO THE DEBTORS AND DEBTORS IN POSSESSION

Upon consideration of the application, dated December 3, 2001, ("Application"), filed by Enron Corp. and certain of its affiliated debtor entities (collectively, the "Debtors"), as debtors and debtors in possession, seeking authorization to employ The Blackstone Group ("Blackstone") as their financial advisors under a general retainer at fees set out in an agreement between Blackstone and the Debtors (the "Blackstone Agreement"), as is more fully set forth in the Application; and upon the affidavit of Steven M. Zelin, president of Blackstone (the "Zelin Affidavit"), which is annexed to the Application; and the Court being satisfied, based on the representations made in the Application and the Zelin Affidavit, that Blackstone represents or holds no interest adverse to the Debtors or to their estates as to the matters upon which it is to be engaged and is disinterested under section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and that the employment of Blackstone is necessary and would be in the best interests of the Debtors and their estates; and it appearing that the Court has jurisdiction to consider the Application; and it appearing that

the relief requested in the Application is in the best interest of the Debtors, their estates and creditors; and it appearing that due notice of the Application has been given and no further notice need be given; and upon the proceedings before the Court; and good and sufficient cause appearing;

IT IS HEREBY ORDERED THAT:

1. The Application is granted.

2. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors are authorized to employ and retain Blackstone as their financial advisors under a general retainer effective as of the commencement of these cases at fees set out in an agreement between Blackstone and the debtors.

3. Blackstone shall be compensated in accordance with the substantive standards set forth in Bankruptcy Code section 328(a) and shall file applications in compliance with the Bankruptcy Code, applicable Federal Rules of Bankruptcy Procedure, local rules of the Court, and such other procedures as may be fixed by order of this Court.

4. To the extent that any of affiliates of the Debtors commence chapter 11 cases which are jointly administered with these chapter 11 cases, the retention of Blackstone and other provisions of this Order shall apply to such debtors and their respective estates.

Dated: New York, New York
_____, 2001

_____
UNITED STATES BANKRUPTCY JUDGE