WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Lawrence J. Baer (LB 9924)

MILBANK, TWEED, HADLEY &
M<sup>C</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
212-530-5000
Luc A. Despins (LD 5141)
Susheel Kirpalani (SK 8926)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :
In re:                                                        :    Chapter 11
                                                              :    Case No. 01-16034 (AJG)
ENRON CORP., et al.,                                          :    Jointly Administered
                                                              :
                              Debtors.                        :
--------------------------------------------------------------X

**JOINT MOTION OF THE DEBTORS AND THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, UNDER 11 U.S.C. §§ 105(a), 502(c) AND 503(b)(1),
FOR (I) ESTIMATION OF CLAIMS OF CERTAIN FORMER EMPLOYEES ARISING
FROM TERMINATION OF EMPLOYMENT AND (II) APPROVAL OF FORM AND
MANNER OF NOTICE AND PROCEDURES FOR DISPUTING ESTIMATION**

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

        Enron Corp. and its affiliated debtor entities, as debtors and debtors in

possession (collectively, "Enron" or the "Debtors") and the Official Committee of

Unsecured Creditors (the "Creditors' Committee"), file this joint motion under 11 U.S.C.

§§ 105(a), 502(c) and 503(b)(1), seeking (i) estimation of any and all claims asserted by

certain former employees arising from termination of employment and (ii) approval of

form and manner of notice and procedures for disputing estimation (the "Joint Estimation

Motion"), and respectfully state as follows:

1.      This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a), 502(c) and 503(b)(1).

**BACKGROUND**

2.      Commencing on December 2, 2001 (the "Petition Date") and, in some instances, periodically thereafter, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been procedurally consolidated for administrative purposes.

3.      On December 12, 2001 and March 29, 2002, in accordance with section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District of New York appointed the Creditors' Committee, and the Employment-Related Issues Committee (the "Employees' Committee"), respectively.

**Previous Orders Concerning Employee Wages and Benefits**

4.      As a "first-day" matter, on December 3, 2001, the Debtors obtained an order (the "First Employee Wage and Benefits Order") authorizing them to pay to employees employed on the Petition Date, in the exercise of the Debtors' business judgment, amounts owed for wages, severance, vacation, benefits, expense reimbursement and certain other amounts, provided that the substantial majority of such

2

employees would not receive in excess of $4,650 per employee pursuant to the order. In addition, the order authorized the Debtors to pay to a limited number of such employees amounts in excess of such $4,650 limit, but not to exceed $15,000 in any individual case.

5.     On January 15, 2002, the Debtors obtained an order modifying, in part, the First Employee Wage and Benefits Order (the "Second Employee Wage and Benefits Order"). The Debtors determined that the First Employee Wage and Benefits Order was insufficient, as it did not distinguish between accrued and unpaid wages, payroll taxes and vacation pay, on the one hand, and other non-wage amounts (such as employee expense reimbursement and benefits), on the other. The Second Employee Wage and Benefits Order clarified that the $15,000 per-employee limit would be applicable to wage and vacation obligations for all employees and former employees. The Debtors were authorized pursuant to the Second Employee Wage and Benefits Order, in their discretion and business judgment, to pay employees and former employees in excess of $15,000 in respect of benefits, expense reimbursement and certain other obligations owing as of the Petition Date.

6.     Pursuant to the authority granted in the First and Second Employee Wage and Benefits Orders, the Debtors paid approximately $4,500 to certain former Enron employees whose employment was terminated in the weeks leading up to the Petition Date and to all eligible former Enron employees whose employment was terminated after the Petition Date, the vast majority of whom ceased working and were terminated within the first few days after the Petition Date.

**Dispute Over Entitlement to Additional Severance Pay**

7.     On February 14, 2002, certain former employees of Enron (the "Former Employees") filed a motion (the "Former Employees' Motion") for an order directing Enron, among other things, to pay the Former Employees and "all others similarly situated"[1] severance pay using the formula contained in the Debtors' pre-petition Severance Pay Plan (the "Enron Severance Plan"), *i.e.*, one week of base pay for each full or partial year of employment plus one week of base pay for each $10,000 (or portion thereof) of base pay, less any severance previously paid to such employee, subject to a $30,000 cap per employee (the "Severance Claims").

8.     On February 14, 2002, the AFL-CIO and the National Rainbow/PUSH Coalition as *amici curiae* (the "*Amici*") filed a response in support of the Former Employees' Motion.

---

[1]     The term "all others similarly situated" is defined in the Former Employees' Motion as "all employees laid off by the Debtors in the year 2001." Former Employees' Motion, ¶ 14. The Parties have subsequently agreed, however, that the former Enron employees who will be eligible to participate in the Settlement shall consist of (a) the Former Employees, (b) the Debtors' employees who were discharged in 2001, but prior to the Petition Date, and who were eligible to receive up to $4,500 as "severance" pursuant to the First and Second Employee Wage and Benefits Orders and the Hardship Payment (as defined in paragraph 9) (collectively, the "Prior Payments"), and (c) the Debtors' employees who were discharged in the period between the Petition Date up to and including February 28, 2002 (collectively, the "Eligible Former Employees"). The Eligible Former Employees do not include any of the foregoing employees who (i) were rehired by the Debtors, (ii) are eligible to participate in the Key Employee Retention, Liquidation Incentive and Severance Plan that was approved by order dated May 8, 2002, or (iii) have already received their maximum award under the Enron Severance Plan (as defined in paragraph 7) as a result of the Prior Payments. The Debtors believe that there are approximately 4,200 Eligible Former Employees.

9.      The Debtors and the Creditors' Committee filed responses to the Former Employees' Motion on or about February 26, 2002.  In the Debtors' response (the "Debtors' Response"), the Debtors requested, *inter alia*, an order, pursuant to 11 U.S.C. §§ 105(a) and 363(b), authorizing the payment of $5 million to an independent former Enron employee hardship fund for distribution to Enron employees discharged in November and December 2001 for medical, family or other hardship reasons arising from such discharge (the "Hardship Payment").  In the Creditors' Committee's response, the Creditors' Committee raised, among others, the issues that (i) the Enron Severance Plan terminated on the Petition Date and (ii) even if there were any allowable Severance Claims, such claims would be pre-petition claims and would not be entitled to administrative expense status payable in full in cash.

10.      On February 27, 2002, the Court held a hearing to consider the Former Employees' Motion and the Debtors' request to make the $5 million Hardship Payment.  The Creditors' Committee did not oppose authorizing the payment of the $5 million Hardship Payment, subject to crediting any distributions against any allowed claims of those receiving payment.  At the hearing, the Court approved the Debtors' request for an order authorizing the $5 million hardship payment and reserved its decision on the remainder of the Former Employees' Motion.  Thereafter, the Court requested additional briefing on the following critical issues:

    a.    Did the Enron Severance Plan terminate, in accordance with its terms, upon the Debtors' bankruptcy filing?

    b.    Assuming the Enron Severance Plan did terminate upon the Debtors' bankruptcy, do the Former Employees have a claim, whether pre-petition or post-petition, for "accrued" severance benefits under the Enron Severance Plan?

11.    On March 8, 2002, the Court, after further consultation with the counsel for the Debtors, the Creditors' Committee, the Former Employees, the *Amici*, the Texas Attorney General and other former Enron employees, entered an order (the "Hardship Payment Order") authorizing Enron to pay the $5 million Hardship Payment equally and ratably among those former employees of Enron who, as of that date, had been paid up to $4,500 pursuant to the First and Second Employee Wage and Benefit Orders.

**Further Litigation Resulted in Compromise and Settlement**

12.    Following entry of the Hardship Payment Order, the Debtors, the Creditors' Committee, the *Amici* and the Employees' Committee (collectively, the "Parties") continued in litigation and each submitted further memoranda of law in respect of the Former Employees' Motion.  Specifically,

(a)    on March 15, 2002, the Former Employees, jointly with the *Amici*, filed a supplemental brief in support of the Former Employees' Motion,

(b)    on April 10, 2002, the Creditors' Committee filed a supplemental brief in response to the Former Employees' Motion, and

(c)    on April 18, 2002, the Employees' Committee submitted a brief in support of the Former Employees' Motion.

13.    Thereafter, at the Debtors' urging, the Court suggested that the Parties attempt to negotiate a possible consensual resolution of the Former Employees' Motion.  The Parties have met and engaged in numerous settlement conferences, including a status conference presided over by the Honorable Arthur J. Gonzalez, all in an effort to consensually resolve all litigation relating to the Severance Claims.

14.     These settlement discussions culminated in an arm's-length good-faith compromise and settlement (the "<u>Settlement</u>") memorialized in a Stipulation of Settlement among the Parties, dated June 14, 2002 (the "<u>Stipulation of Settlement</u>").   In furtherance of the Stipulation of Settlement, and to afford all Eligible Former Employees the opportunity to participate in the settlement, the Parties are filing contemporaneously herewith the Joint Motion of Official Committee of Unsecured Creditors, Debtors, Former Enron Employees, AFL-CIO and the National Rainbow/PUSH Coalition and Official Employment-Related Issues Committee for an Order, Under 11 U.S.C. §§ 105(a), 363(b), 1103(c)(5) and 1109(b) and Fed. R. Bankr. P. 9019, Approving (A) Settlement of Termination and Severance Claims of Similarly Situated Claimants, (B) Procedures for Opting Out of Settlement, (C) Form and Manner of Notices to Eligible Former Employees and (D) Assignment of Authority to Prosecute Certain Avoidance Actions (the "<u>Joint Settlement Motion</u>").

15.     All Eligible Former Employees will be receiving a summary notice of the Joint Settlement Motion describing the details of the Settlement and the terms and conditions thereof.  In sum, the Settlement will provide each settling Eligible Former Employee, among other things, cash payment of a severance award, calculated by reference to the Enron Severance Plan, up to a maximum amount of $13,500 (the "<u>Severance Award</u>"), inclusive of any severance amount previously paid by Enron (approximately $5,678), <u>plus</u> a potential additional distribution of his or her *pro rata* share of certain avoidance action recoveries, if such actions are successful.  All of the Parties, having thoroughly researched and briefed the issues, believe that substantial risks

of further litigation over the Severance Claims exist for both sides. Accordingly, all of the Parties are encouraging Eligible Former Employees to participate in the Settlement.

**Right to Opt Out of Settlement and Litigate Separately**

16. The Settlement is not mandatory, and Eligible Former Employees are entitled to "opt out" or exclude themselves from the Settlement. However, to the extent any Eligible Former Employees opt out of the Settlement, the Joint Settlement Motion reserves all rights and powers of the Debtors and the Creditors' Committee under the Bankruptcy Code to seek, among other things, disallowance entirely, allowance in an amount less than the Severance Award and/or estimation of any claim asserted by such employees (the "Opt-Out Claimants") for severance (the "Opt-Out Severance Claims") and other claims arising from termination of employment (the "Additional Termination Claims"). ***This Joint Estimation Motion is an exercise of such rights and powers, and is directed only at the Opt-Out Claimants who have excluded themselves from the Settlement and who wish to assert Opt-Out Severance Claims.***

**Total Cost of Post-Petition "Severance" Payments and the Settlement**

17. Including the pro-rata share of the Hardship Payment ($1,178), each Eligible Enron Employee has been authorized to receive up to $5,678 as a form of "severance" pay, even though the Debtors and the Creditors' Committee have asserted that the Severance Plan terminated on the Petition Date. Accordingly, since the Petition Date, the Debtors have voluntarily paid approximately $24 million in the aggregate to the Eligible Former Employees as "severance" pay.

18.     If the Joint Settlement Motion is approved by the Court and no Eligible Former Employees opt out of the Settlement, the additional cost to be borne by the Debtors' estate to fund the Settlement will be approximately $29 million. Thus, the total cost of post-petition payments to Eligible Former Employees on account of alleged severance claims would be $53 million, taking into account the Prior Payments.

**Withdrawal of Settlement Contingent on Status of Opt-Out Severance Claims**

19.     Estimation of the Opt-Out Severance Claims is essential to consummation of the Stipulation of Settlement. Pursuant to the Stipulation of Settlement, the Debtors or the Creditors' Committee have the right, in their discretion, to withdraw the Joint Settlement Motion and rescind the Stipulation of Settlement if the total amount of Opt-Out Severance Claims allowed as administrative expenses in these cases exceeds the total cost of paying all such Opt-Out Severance Claims had they been part of the Settlement. Thus, the Debtors and the Creditors' Committee are requesting the Court, among other things, to estimate for purposes of allowance any Opt-Out Severance Claims prior to final consideration of the Joint Settlement Motion.

**Relief Requested**

20.     By this Joint Estimation Motion, the Debtors and the Creditors' Committee seek estimation of any and all Opt-Out Severance Claims pursuant to the estimation procedures and upon the proposed notice described herein. The Debtors and the Creditors' Committee ask the Court to estimate the Opt-Out Severance Claims, for purposes of allowance, at the total amount of payments on account of "severance" that any Opt-Out Claimant has already received from the Debtors following the Petition Date. (*See supra* ¶ 17.) The Debtors and the Creditors' Committee have briefed the Court,

which briefing is incorporated herein by reference, as to their position that because the Enron Severance Plan automatically terminated on the date of Enron's bankruptcy filing, the Opt-Out Claimants have no claim for severance under the Enron Severance Plan and, even if the Opt-Out Claimants could assert some claim for "accrued" pre-petition severance, such claims should not be entitled to administrative priority status. The Debtors and the Creditors' Committee submit that, given the circumstances of the termination of employment almost contemporaneously with the bankruptcy filing, no Opt-Out Claimant will be able to demonstrate an entitlement to an administrative priority payment greater than the amount of "severance" they have received to date. If any Opt-Out Claimant disputes the Debtors and the Creditors' Committee's position, they must submit a response, as described below, demonstrating why they believe they are entitled to more than the amounts they have already received as administrative payments.

21.     In addition, the Debtors and the Creditors' Committee jointly seek estimation of any Additional Termination Claims. It is likely that the estimation of these Additional Termination Claims will vary according to the nature of the claim, the adequacy of proof and any applicable defenses. The Debtors do not believe, however, that, based on their records and the events leading up to the Eligible Former Employees' termination, the Additional Termination Claims have significant, if any, value. Depending on the type and amount of Additional Termination Claims asserted, the Debtors and the Creditors' Committee reserve the right to request a separate hearing to estimate some or all of the Additional Termination Claims, and ask the Court to order a briefing schedule for resolution of such claims.

22.     Regardless of the types and amount of claims asserted by the Opt-

Out Claimants, the Debtors and the Creditors' Committee believe that the Court should be guided in estimating the Opt-Out Severance Claims and the Additional Termination Claims by reference to the consideration that is being provided in settlement and full satisfaction of all such claims pursuant to the Settlement.

<u>**Basis for Relief Requested**</u>

23.     Section 502(c) of the Bankruptcy Code provides in pertinent part that "[t]here shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c).

24.     A court may estimate the approximate value of a claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible. *In re Brints Cotton Marketing, Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984). Although the court is bound by the legal rules that govern the ultimate value of the claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the value of a claim or claims. *Id.*; *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 135 (3d Cir. 1982) (estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"); *In re Windsor Plumbing Supply Co., Inc.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y 1994) (advocating use of probabilities in estimation of claims rather than more simplistic all or nothing approach); *In re Baldwin-United Corp.*, 55 B.R. 885, 898-99 (Bankr. S.D. Ohio 1985) (estimation "does not require that the judge be clairvoyant").

25.     In the Enron chapter 11 cases, the Debtors anticipate the filing of billions of dollars of claims. The Debtors submit that this alone substantiates use of the

Court's estimating power to resolve groups of similar claims held by similarly situated individuals such as the Eligible Former Employees.

26. Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The methods used by courts include summary trials (*Baldwin*, 55 B.R. at 899), a review of written submissions of proposed facts (*Windsor*, 170 B.R. at 517), and a review of the pleadings and briefs. *In re Lane*, 68 B.R. 609, 613 (Bankr. D. Haw. 1986); *see also Baldwin*, 55 B.R. at 898 (court estimated certain claims at $0 for purposes of allowance under 502(c) based on a prior opinion in Multi-District Litigation and a hearing on the merits of the claims); *In re Zolner*, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) (estimation of union contract claims based upon testimony and arguments, in addition to briefing and submission of affidavits); *In re Apex Oil Corp.*, 92 B.R. 843, 845 (Bankr. E.D. Mo. 1988) (applying summary trial brief on each claim subject to estimation). Whatever the procedure the bankruptcy court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." *Bittner*, 691 F.2d at 137 (*citing* Cong. Rec. H 11101-H 11102 (daily ed. Sept. 82, 1978)).

27. In *Adams v. Cumberland Farms, Inc.*, No. 95-1736, 1996 WL 228567, at *1 (1st Cir. May 7, 1996) (unpublished), eleven former employees filed proofs of claim against the debtor. 1996 WL 228567, at *1. The claims were based on the employees' assertions of false imprisonment, wrongful termination, malicious prosecution, abuse of process, defamation, intentional infliction of emotional distress, and violation of state civil rights laws. *Id.* In order to estimate these claims, the debtor filed a motion requesting that the Court use a settlement in a separate parallel class action suit

involving similar claims against the debtor as a vehicle for estimating and discharging all of the claims filed by the former employees. *Id.* The bankruptcy court granted the motion and ordered that the former employees' claims would be estimated and resolved in accordance with the terms of the parallel settlement agreement. *Id.* On appeal by the former employees, the district court affirmed. *Id.*

28. On appeal to the Court of Appeals for the First Circuit, the former employees argued, among other things, that the bankruptcy court abused its discretion in ordering that the former employees participate in the settlement. 1996 WL 228567, at *4 -*5. The Court of Appeals affirmed the bankruptcy court's order and held that it could "find no reason to think that a court-approved settlement in such a strikingly parallel proceeding would not provide a reasonable benchmark for estimating the value of the former employees' claims" *Id.* at *4.

29. In the instant case, in light of the Stipulation of Settlement and the litigation that would take place in absence of the Stipulation of Settlement, the Debtors respectfully request the Court to hold that the section 502(c) estimation process for the Opt-Out Claimants, as defined below, is the most appropriate, efficient and equitable method of estimating the Opt-Out Claims. As in *Adams*, the claims subject to resolution under the Stipulation of Settlement are the same claims that any potential Opt-Out Claimant may assert in the Claims Estimation Proceeding sought by the Debtors and the Creditors' Committee herein. Accordingly, the Court should use the Stipulation of Settlement as a benchmark to estimate the maximum value, if any, of the Opt-Out Claims. The Debtors and the Creditors' Committee reserve their rights to seek, among other things, complete disallowance of any Opt-Out Claims if the Court determines not to

estimate them at the existing settlement amounts. The alternative to an estimation proceeding would be unnecessary expenditure of enormous amounts of time, effort and money, in connection with litigation to liquidate the Opt-Out Claims. The Debtors respectfully submit that the Court's approval of the Estimation Procedures will permit these chapter 11 cases to proceed in an orderly manner, and provide the most effective and efficient method to accomplish the statutory purpose in chapter 11 of speeding distributions to creditors.

### The Claims Estimation Procedures

30.     The Debtors and the Creditors' Committee propose that the estimation of the Opt-Out Severance Claims and the Additional Termination Claims be conducted in accordance with the following procedures:

### Response Forms for Disputing Estimation of Claims

- Each Opt-Out Claimant must complete, sign, date and return by the Response Deadline (as defined below) a written response in the form attached hereto as Exhibit "B" (the "Response Form"), which will be sent to every Eligible Former Employee together with the summary notice described below.

- The completed Response Form must provide (i) a written statement setting forth facts and arguments supporting his or her Opt-Out Severance Claim and any Additional Termination Claims, (ii) a written statement of every reason he/she believes that the claim(s) asserted are entitled to priority payment under the Bankruptcy Code, and (iii) evidentiary support upon which such Opt-Out Claimant will rely at the Estimation Hearing (the "Evidentiary Support").

- Each Response Form must be sent, *so as to be received* by the following parties *no later than 30 days* after service of the Response Form (the "Response Deadline"), to the following (a) Enron Corp., 1400 Smith Street, Houston, Texas 77002-7361, Attention: Robert W. Jones; (b) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Lawrence J. Baer, Esq., Attorneys for the Debtors; and

(c) Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, New York 10005, Attention: Susheel Kirpalani, Esq., Attorneys for the Creditors' Committee.

- The failure of any Opt-Out Claimant to complete, sign, date and return a Response Form so as to be received on or before the Response Deadline would result in a determination by the Court that the aggregate of such Opt-Out Claimant's Opt-Out Severance Claim and Other Termination Claims is estimated for allowance purposes at the amount of Prior Payments already received by such Opt-Out Claimant.

**Time, Place, and Conduct of Estimation Hearing**

- A hearing on the estimation of Opt-Out Severance Claims and Other Termination Claims (the "Estimation Hearing") shall be held no sooner than 5 days after the Response Deadline. Prior to the Estimation Hearing, the Debtors and the Creditors' Committee will file with the Court a summary of all claims asserted in Response Forms submitted by the Opt-Out Claimants including, at a minimum, all Opt-Out Severance Claims. Depending on the magnitude and identity of issues of such Opt-Out Severance Claims, the Court will restrict the number of representatives permitted to present argument on behalf of all similarly situated Opt-Out Claimants and will limit such argument to a maximum of 90 minutes. The Debtors and the Creditors' Committee will also be limited to one 90-minute period to present their arguments to similarly situated Opt-Out Claimants. Additional time may be allotted by the Court if necessary to resolve specific factual issues raised based on any discrepancies between the information contained in the Response Forms and the Debtors' books and records. Other parties in interest may be permitted to be heard at the Estimation Hearing in the Court's discretion.

- The Debtors and the Creditors' Committee reserve the right to seek adjournment, if time constraints exist, of the estimation of any Other Termination Claims asserted by the Opt-Out Claimants.

- The Estimation Hearing may be adjourned from time to time without further notice other than (i) an announcement in open court of the adjourned date or dates of the Estimation Hearing or an adjourned hearing, and (ii) posting such announcements on Enron's website, www.Enron.com.

**Summary Notice of Motion and Notice of Estimation Hearing**

31.     The Debtors and the Creditors' Committee propose to give notice of this Joint Estimation Motion and the Estimation Hearing by (A) filing a summary notice in the form annexed hereto as Exhibit "A" (the "Estimation Notice and Procedures") of this Joint Estimation Motion with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), (B) serving the Estimation Notice and Procedures, which shall include the Response Form, by first class mail deposited as soon as practicable after the date of entry of the Order, in the form attached hereto as Exhibit "D", authorizing the Estimation Procedures (the "Estimation Procedures Order") on (i) all Eligible Former Employees, (ii) the office of the United States Trustee for the Southern District of New York, (iii) the attorneys for JP Morgan Chase Bank, (iv) the attorneys for Citibank, (v) counsel to any other committee appointed in the Debtors' chapter 11 cases, including the Employees' Committee; and (vi) any person, or counsel if retained, appointed pursuant to 28 U.S.C. § 1104, and (C) making the full Joint Settlement Motion available on Enron's website at www.Enron.com.  In addition, the Debtors will publish a summary notice, substantially in the form attached hereto as Exhibit "C", in the *Houston Chronicle* and on Enron's website shortly after mailing the Estimation Notice and Procedures.

32.     The Estimation Notice and Procedures shall set forth, among other things, a summary of this Joint Estimation Motion, instructions on how to obtain the full document, and a description of the Estimation Procedures.  The Debtors submit that such notice constitutes good and sufficient notice of this Joint Estimation Motion and the Estimation Hearing and that no further notice need be given.  Accordingly, the Debtors request that the Court approve the form and manner of notice set forth herein.

**Notice**

33.     No trustee has been appointed in these chapter 11 cases.  Notice of this Motion has been given in accordance with the Court's Amended Case Management Order Establishing, Among Other Things, Noticing Electronic Procedures, Hearing Dates, Independent Website and Alternative Methods of Participation at Hearings, dated February 26, 2002 (the "Case Management Order") and upon the Opt-Out Claimants. The Debtors submit that no other notice need be given.

34.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

35.     No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors and the Creditors' Committee respectfully request that the Court (a) approve the Estimation Procedures, (b) fix notice procedures and approve form and manner of notice, (c) set the date and time for the Estimation Hearing, and (d) grant the Debtors and the Creditors' Committee such other and further relief as is just.

Dated: New York, New York
       June 14, 2002

By:    ___/s/ Martin J. Bienenstock___
       Martin J. Bienenstock (MB 3001)
       Lawrence J. Baer (LB 9924)
       WEIL GOTSHAL & MANGES LLP
       767 Fifth Avenue
       New York, New York 10153
       Telephone:  (212) 310-8000
       Facsimile:  (212) 310-8007

       ATTORNEYS FOR DEBTORS
       AND DEBTORS IN POSSESSION

By:    ___/s/  Susheel Kirpalani___
       Luc A. Despins (LD 5141)
       Susheel Kirpalani (SK 8926)
       MILBANK, TWEED, HADLEY &
       MCCLOY LLP
       1 Chase Manhattan Plaza
       New York, New York 10005
       Telephone:  (212) 530-5000

       ATTORNEYS FOR THE
       OFFICIAL COMMITTEE OF
       UNSECURED CREDITOR

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re:                                   :
                                         :   Chapter 11
ENRON CORP., et al.,                     :   Case Nos. 01-16034 (AJG)
                                         :   Jointly Administered
                                         :
                    Debtors.             :
-----------------------------------------------------x

## ESTIMATION NOTICE AND PROCEDURES FOR THOSE
## FORMER EMPLOYEES WHO HAVE OPTED OUT OF THE SETTLEMENT

TO:    **Only those** former employees of Enron Corp. or any of its affiliated debtors and debtors
       in possession in the above-captioned cases (collectively, "Enron" or the "Debtors") **who
       have OPTED OUT** (the "Opt-Out Claimants") of the proposed settlement (the
       "Severance Litigation Settlement") (as described below in paragraph 5) of a legal
       proceeding commenced by certain former employees of Enron seeking severance pay on
       behalf of all similarly situated former Enron Employees (the "Severance Litigation").

### IF YOU HAVE NOT OPTED OUT OF THE SEVERANCE LITIGATION
### SETTLEMENT, YOU DO NOT NEED TO READ THIS NOTICE.

**THERE IS NO CLAIM BEING MADE AGAINST YOU, BUT YOU ARE
ENCOURAGED TO CONSULT WITH AN ATTORNEY BECAUSE YOUR LEGAL
RIGHTS ARE BEING AFFECTED BY THE PROCEEDINGS DESCRIBED BELOW.
OPT-OUT CLAIMANTS WHO DO NOT SUBMIT AN ESTIMATION RESPONSE
FORM (AS DESCRIBED BELOW PARAGRAPH 7) WILL BE FOREVER BARRED
FROM CONTESTING THE DISPOSITION OF THEIR OPT-OUT CLAIMS.**

        1.    **Purpose of the Notice:**  This Estimation Notice and Procedures (this "Notice") is
being sent pursuant to an Order of the United States Bankruptcy Court overseeing Enron's
bankruptcy cases (the "Court") to inform you:

                (a)    that on June 14, 2002, the Debtors and the Official Committee of
Unsecured creditors (the "Creditors' Committee") filed a motion (the "Joint Estimation Motion")
requesting that the Court estimate any and all claims asserted by Opt-Out Claimants related to
claims for severance pay (the "Opt-Out Severance Claims") and any and all other claims arising
from the termination of their employment from Enron (the "Other Termination Claims");

                (b)    of your rights as an Opt-Out Claimant to dispute the Joint Estimation
Motion;

(c)    of the procedures that each Opt-Out Claimant must follow in order to dispute the proposed estimation, including the submission of a completed estimation response form (the "Response Form").  The Response Form is included in the envelope with this Notice.

(d)    of a hearing commencing on [**WILL INSERT DATE NO SOONER THAN 5 DAYS AFTER RESPONSE DEADLINE**] (the "Estimation Hearing"), at which the Court will estimate the Opt-Out Severance Claims and the Other Termination Claims.

2.    **Bankruptcy Filing**.  Commencing on December 2, 2001 (the "Petition Date"), the Debtors filed voluntary petitions for reorganization relief under chapter 11 of the Bankruptcy Code.

3.    **Prior Voluntary Payments**.  Enron has made voluntarily payments of $4,500 to each of the former Enron employees who were discharged during the period leading up to the Petition Date and within the first few days after the Petition Date (the "Eligible Former Employees"), and later paid an additional approximately $1,178 to each of the Eligible Former Employees.  These payments together totaled up to approximately $5,678 for each Eligible Former Employee (the "Prior Payments") and have cost Enron's estates approximately $24 million.

4.    **Summary of the Severance Litigation**.

(a)    Former Employees' Motion.    On February 14, 2002, the Former Employees[1] filed a motion (the "Former Employees' Motion") in these bankruptcy cases seeking, among other things, to require the Debtors to pay the Former Employees and "all others similarly situated" severance pay as determined pursuant to the Enron's pre-existing Enron severance plan (the "Enron Severance Plan") (one week of base pay for each full or partial year of employment plus one week of base pay for each $10,000 (or portion thereof) of base pay, less any severance previously paid to such employee), subject to a $30,000 cap per employee.

(b)    The Parties to the Severance Litigation.  The AFL-CIO, the National Rainbow/PUSH Coalition as "Friends of the Court" and the Employment-Related Issues Committee (the "Employees' Committee") filed legal pleadings in support of the Former Employees' Motion. Enron and the Creditors' Committee filed legal pleadings in response to the Former Employees' Motion.  (All of these groups are together referred to as the "Severance Litigation Parties.")

(c)    The Settlement.  The Severance Litigation Parties have determined, based on issues that were briefed to the Court, that substantial risks to both sides existed in continued litigation.  Because of these risks, they negotiated the Severance Litigation Settlement.

---

[1]  The Former Employees are Gwendolyn B. Gray, Louis Allen, Katherine Benedict, Mike Boutcher, Laurie Fossati, Kimberly A. Garcia, Helen Haynes, Janice Hollaway, Gustavia Lee, Nicolas Jack, Marc Janichen, Debra Johnson, Helen Mathews, Gregory McIntyre, Michael Oehrle, Jitendra Patel, Jessie Patterson, Debbie Perrotta, Phillip Randle, Pam Rhea, Elaine Rodriguez and Tracy Williams.

5.     **The Severance Litigation Settlement**.  You have also separately received a notice package describing the Severance Litigation Settlement including your right to opt out. The full terms of the Severance Litigation Settlement are set forth in a Stipulation of Settlement, dated June 14, 2002, which has been filed with Court and is available electronically at the Enron website, www.Enron.com.  The Severance Litigation Settlement provides that, among other things, if the Severance Litigation Settlement is approved, each Eligible Former Employee who does not opt out of the Severance Litigation Settlement (the "Settling Former Employees") will receive a cash payment calculated by reference to the Enron Severance Plan, up to a maximum amount of $13,500 (the "Severance Settlement Award"), minus any Prior Payments.  As a possible additional award, the Settling Former Employees may be eligible to receive a portion of the proceeds (if any) generated by certain lawsuits brought by the Employees' Committee.

6.     **The Joint Estimation Motion**.

(a)     The Joint Estimation Motion filed by the Debtors and the Creditors' Committee asks the Court to "estimate," or approximate, the value of the Opt-Out Severance Claims and Other Termination Claims that are submitted, if any, by Opt-Out Claimants.  (The full terms of the Joint Estimation Motion are available electronically at the Enron website, www.Enron.com.)  The Court has wide discretion to establish the best method for estimating claims.  The Debtors and the Creditors' Committee believe that because the Opt-Out Claimants and the Settling Former Employees were discharged from Enron under similar circumstances, and therefore have similar types of claims, the Court should use the Severance Litigation Settlement as a guidepost for estimating the Opt-Out Severance Claims and the Other Termination Claims.

(b)     In the Joint Estimation Motion, the Debtors and the Creditors' Committee seek to have (i) the Opt-Out Severance Claims estimated as the amount of Prior Payments that each Opt-Out Claimant has already received (so that there would be no further payment for these claims), and (ii) the Other Termination Claims, if any, together with the Opt-Out Severance Claims, estimated at no more than the Settlement Severance Award that each Opt-Out Claimant would have received pursuant to the Severance Litigation Settlement.

7.     **The Estimation Response Form.**

(a)     The Debtors and the Creditors' Committee believe that because the Enron Severance Plan automatically terminated on the date of Enron's bankruptcy filing, the Opt-Out Claimants have **no claim** for severance under the Enron Severance Plan.  Even if the Opt-Out Claimants could assert some claim for "accrued" severance, the Debtors and Creditors' Committee believe that these claims should be treated like every other pre-Petition Date creditor's claim, in other words, paid-out at the end of the bankruptcy process according to a plan of distribution in an amount that would likely be a fraction of the total claim.

(b)     The Response Form, which is enclosed with this Notice, is your **only** opportunity to state your position as to why you believe you are entitled to more than the Prior Payments you have already received.  You must complete, sign, date and return the Response Form so as to be received by ***no later than [WILL INSERT DATE 30 DAYS FROM SERVICE***

**OF THIS NOTICE]** *(the "<u>Response Deadline</u>")*.  <u>Return the Response Form to Robert W. Jones, Enron Corp. and Affiliates, 1400 Smith Street, Houston, TX, 77002.</u>

        (c)      The Response Form requires that you state the reasons why you believe that you have an Opt-Out Severance Claim and/or Other Termination Claims worth more than the Prior Payments you have already received.  You must include copies of any documentation or other evidence that you believe supports your Opt-Out Severance Claim and/or Other Terminations Claims.

        (d)      The Response Form also requires that you indicate by checking a box if you believe that your Opt-Out Severance Claim and/or Other Termination Claims, if any, are entitled to priority under sections 503(b) and/or 507(a) of the Bankruptcy code.  If so, you must state all legal grounds for asserting such entitlement to priority on the Response Form.  **If you do not establish that your claims, if any, are entitled to priority, your claims will be estimated as pre-petition general unsecured claims against the applicable Debtor and not entitled to any priority in payment.**

        (e)      If you have opted out of the Settlement but ***do not*** complete, sign, date and return a Response Form so as to be received by the Response Deadline, the Debtors and the Creditors' Committee will request that the Court estimate any Opt-Out Severance Claim ***and*** any and all Other Termination Claims that you may claim you have in the amount of Prior Payments you have already received.

        8.      <u>**The Estimation Hearing.**</u>

        (a)      The Estimation Hearing will take place on [***WILL INSERT DATE NO SOONER THAN 5 DAYS AFTER RESPONSE DEADLINE***] at __.m, before the Honorable Arthur J. Gonzalez, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York  10007.

        (b)      At the Estimation Hearing you will be given an opportunity to speak in Court in support of the claims asserted in your Response Form.  Depending on the number of Opt-Out Claimants and the types of claims asserted, the Court may restrict the number of Opt-Out Claimants permitted to present argument on behalf of Opt-Out Claimants with similar claims.  Any updates on the procedures for the Estimation Hearing will be posted by [***INSERT DATE THAT IS 2 DAYS PRIOR TO HEARING***] on Enron's website, <u>www.Enron.com.</u>

        (c)      Although you are encouraged to appear in person at the Estimation Hearing, you ***do not*** have to do so and may rely solely on your submission of the Response Form and any evidentiary support you may wish to submit with the Response Form.  **If you do not appear in person, you must provide your contact information on the attached form and be available to give sworn testimony during the Estimation Hearing by telephone.**

        9.      <u>**Other Matters.**</u>  This Notice is only a summary of the Joint Estimation Motion. The full Joint Estimation Motion is available electronically for your review on Enron's website, <u>www.Enron.com</u>.  In addition, all pleadings and documents filed in the Court may be reviewed and/or copied in the office of the Clerk of the United States Bankruptcy Court for the Southern

District of New York, One Bowling Green New York, New York 10007.  This Notice has been approved by the Court to provide adequate notice of the pendency of the Joint Estimation Motion and your rights with respect thereto.

Dated:  New York, New York
       June \_\_, 2002

WEIL, GOTSHAL & MANGES LLP         MILBANK, TWEED, HADLEY & MCCLOY LLP
767 Fifth Avenue                     1 Chase Manhattan Plaza
New York, New York  10153          New York, New York  10005
*Counsel for the Debtors*             *Counsel for the Creditors' Committee*

### DO NOT CONTACT THE COURT CONCERNING THIS NOTICE

In you have any questions concerning this Notice, you may write or call:

       Robert W. Jones
       Enron Corp. And Affiliates
       1400 Smith Street
       Houston, TX  77002
       (713) 345-9200

# EXHIBIT B

## INSTRUCTIONS FOR COMPLETING ESTIMATION FORM
## FOR DISPUTING ESTIMATION OF SEVERANCE AND
## OTHER CLAIMS ARISING FROM TERMINATION OF EMPLOYMENT

**IMPORTANT:** **ONLY COMPLETE AND RETURN THE ATTACHED FORM <u>IF YOU HAVE OPTED OUT OF THE SETTLEMENT</u> OF SEVERANCE LITIGATION AND WISH TO HAVE YOUR EMPLOYMENT TERMINATION CLAIMS DETERMINED BY THE COURT;** *IF YOU HAVE OPTED OUT OF THE SETTLEMENT AND DO NOT RETURN THE ATTACHED FORM, YOU WILL NOT RECEIVE ANY FURTHER PAYMENTS.*

    1.   The attached Response Form for Disputing Estimation of Severance and Other Claims Arising from Termination of Employment (the "<u>Estimation Response Form</u>"), together with the Estimation Notice (the "<u>Estimation Notice</u>"), should **ONLY** be used by those persons who have opted-out of the proposed settlement (the "<u>Settlement</u>") (as described in the Estimation Notice, paragraph 5) of a legal proceeding commenced by certain former employees of Enron Corp. or its affiliates ("<u>Enron</u>") in the above-captioned cases seeking severance pay on behalf of all similarly situated former Enron employees.

    2.   If you **DO NOT WANT** to participate in the Settlement **AND** believe you can prove at the Estimation Hearing that you are entitled to receive a greater monetary award from Enron as the result of the termination of your employment than is being provided under the Settlement, you **MUST** return the Response Form *so as to be received no later than [WILL INSERT DATE 30 DAYS FROM SERVICE]*:

            Return to:    Robert W. Jones
                          Enron Corp. and Affiliates
                          1400 Smith Street
                          Houston, TX  77002

    3.   Enron and the Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") appointed in Enron's bankruptcy cases have asked the Bankruptcy Court to have any severance claims you assert from being discharged by Enron estimated at the amount of money you have already received from Enron.  If you can establish any claims for employment termination other than severance claims, Enron and the Creditors' Committee have asked the Bankruptcy Court to have all such claims, together with any severance claims, estimated at no more than the amount being offered to each eligible former employee under the Settlement.

    4.   The Estimation Hearing will take place on [***WILL INSERT DATE NO SOONER THAN 5 DAYS AFTER RESPONSE DEADLINE***], at ___ __.m., before the Honorable Arthur J. Gonzalez, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10007.  Although you are encouraged to appear in person at the Estimation Hearing, you do not have to do so and may rely solely on your submission of the Response Form and any evidentiary support you may wish to submit with the Response Form.  **If you do not appear in person, you must provide your contact information on the attached form and be available to give testimony during the Estimation Hearing by telephone.**

<u>**DO NOT CONTACT THE COURT CONCERNING THE ATTACHED RESPONSE FORM**</u>

I, _____, hereby declare under the penalties of perjury, that the following information provided below is, to the best of my knowledge, accurate and complete:

_____
Home Street No.

_____
City                        State                        Zip Code

_____          _____
Telephone No. (Day)                        Telephone No. (Evening)

_____          _____
Social Security No.                        Enron Employee I.D. No.

What was the name of the Enron entity with whom you were employed (hereafter "Enron")? _____

What date did you begin employment with Enron? _____

What was the date that you were discharged from Enron? _____

What reason was given for your discharge?_____

Did you have a written employment agreement with Enron? (circle one)  **YES    NO**

Did you ever sign a release or waiver agreement with Enron? (circle one)  **YES    NO**

What was your weekly base salary when you were discharged from Enron?  $_____

Have you collected unemployment benefits since you were discharged? (circle one)  **YES    NO**

> *If you circled yes:*

> When did you start collecting unemployment benefits? _____

> What is (was) the amount of your weekly benefit (before taxes)?  $_____

> Are you still receiving unemployment benefits?  (circle one)  **YES    NO**

> What is the total amount of the unemployment benefits you have received? $_____

Have you obtained other employment, including self-employment, since you were discharged from Enron? (circle one)  **YES  NO**

> *If you circled yes:*

> When did you start your new employment? _____

> What is the total gross compensation received from such employment?  $_____

## CHECK ALL BOXES THAT APPLY:

**CLAIM FOR SEVERANCE PAY:** Please provide below the *amount* of severance you believe you are owed from Enron and a *statement* of the basis for your claim for severance.

**Amount of Severance Claimed**:                        $_____

Statement of basis for severance claim: (You may add additional pages if you need more space to complete your statement.)

_____
_____
_____

**OTHER CLAIMS ARISING FROM TERMINATION OF EMPLOYMENT:** Please list below any other amounts you believe you are owed from Enron and a *statement* of the basis for these claims. **DO NOT INCLUDE** CLAIMS FOR WAGES, OR FOR BENEFITS UNDER THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, ("ERISA") (except for severance) as those claims will not be a part of the Estimation Hearing. **DO INCLUDE** ANY CLAIMS YOU BELIEVE YOU HAVE FOR wrongful discharge; breach of contract, both express and implied; and any and all claims arising out of any other laws relating to employment or employment discrimination and under any federal, state or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, the Americans with Disabilities Act of 1990, the Fair Labor Standards Act, the Worker Adjustment and Retraining Notification Act, the Texas Commission on Human Rights Act, and any other applicable state and local fair employment laws.

**Amounts Claimed (Other than for Severance)**:      $_____

Statement of basis for claims: (You may add additional pages if you need more space to complete your statement.)

_____

_____

_____

_____


**EVIDENTIARY SUPPORT:** Check this box if you have documentation or other evidence supporting your severance or other claim(s). **You must attach copies of all documentation or other evidence (including employment agreements, termination notice, release or waiver agreements, records of any conversations, correspondence or e-mails) supporting your severance or other claim(s) upon which you will rely in disputing the estimation of your claim(s) at the Estimation Hearing. THE DEBTORS AND THE CREDITORS' COMMITTEE WILL SEEK TO EXCLUDE ANY EVIDENCE YOU SEEK TO INTRODUCE AT THE ESTIMATION HEARING IF IT IS NOT PROVIDED WITH THIS RESPONSE FORM.**


**CLAIM(S) ARE ENTITLED TO PRIORITY STATUS:** Check this box if you believe your claim is entitled to priority under sections 503(b) and/or 507(a) of the Bankruptcy Code. State all legal grounds for asserting entitlement to priority, below. If you do not check this box, your claims will be estimated as pre-petition general unsecured claims against the applicable Debtor not entitled to any priority in payment.

_____

_____

_____

_____


Signature of claimant/declarant: _____   Date: _____

Name and phone number of your attorney, if any:_____


**COMPLETE, SIGN, DATE AND RETURN THIS FORM SO AS TO BE RECEIVED NO LATER THAN [*WILL INSERT DATE 30 DAYS FROM DATE OF SERVICE*] TO THE FOLLOWING ADDRESS:**

> **Robert W. Jones**
> **Enron Corp. and Affiliates**
> **1400 Smith Street**
> **Houston, TX  77002**
> **(713) 345-9200**

# **EXHIBIT C**

## NOTICE OF ESTIMATION OF CLAIMS FOR
## FORMER ENRON EMPLOYEES WHO HAVE *OPTED OUT* OF THE SETTLEMENT RELATING TO SEVERANCE PAY AND TERMINATION CLAIMS

**TO:    ALL PERSONS WHO WERE DISCHARGED BY ENRON CORP. OR ITS AFFILIATED DEBTORS ("ENRON" OR THE "DEBTORS") IN THE ABOVE-CAPTIONED CASES AFTER DECEMBER 2, 2001 BUT BEFORE MARCH 1, 2002 AND WHO *OPTED OUT* OF A PROPOSED SETTLEMENT RELATED TO SEVERANCE PAY AND TERMINATION CLAIMS (THE "SETTLEMENT").**

This notice is for those former Enron employees who have affirmatively opted out of the Settlement by signing and returning the yellow Opt Out Form. By Opting Out of the Settlement, you have chosen not to share in the benefits of the Settlement. If you have opted out of the Settlement you must sign and return the yellow Response Form for Estimation (the "Response Form") that was sent to you in connection with the Settlement *so as to be received no later than _____, 2002 to*:  Robert W. Jones, Enron Corp. and Affiliates, 1400 Smith Street, Houston, TX  77002.

If you do not have the detailed Estimation Notice and Procedures and the yellow Estimation Response Form, which describes the estimation process and your rights thereunder, you may obtain these materials by writing or calling:  Robert W. Jones, Enron Corp. and Affiliates, 1400 Smith Street, Houston, TX 77002, (713) 345-9200. These documents may also be obtained at the Enron website, www.Enron.com.

**YOU ARE HEREBY NOTIFIED**, that a hearing to consider the estimation of the severance and termination claims of former Enron employees who have opted out of the Settlement will take place on _____, 2002, at _____ in the Courtroom of the Honorable Arthur J. Gonzalez, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10007.

Lawrence J. Baer, Esq.                    Susheel Kirpalani, Esq.
Weil, Gotshal & Manges LLP                Milbank, Tweed, Hadley & McCloy LLP
767 Fifth Avenue                          One Chase Manhattan Plaza
New York, New York 10153                  New York, New York 10005
*Counsel for the Debtors*                 *Counsel for the Creditors' Committee*

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11
                                          :
ENRON CORP., et al.,                      :        Case No. 01-16034 (AJG)
                                          :
                                          :        Jointly Administered
                        Debtors.          :
-------------------------------------------------------------x
```

**ORDER (I) APPROVING PROCEDURES FOR DISPUTING ESTIMATION
IN CONNECTION WITH THE ESTIMATION OF CLAIMS OF CERTAIN
FORMER EMPLOYEES ARISING FROM TERMINATION OF
EMPLOYMENT AND (II) APPROVING FORM AND MANNER OF NOTICE**

Upon consideration of the joint motion, dated June 14, 2002 (the "Joint

Estimation Motion"),[1] filed by Enron Corp. ("Enron") and certain of its affiliated debtor

entities (collectively, the "Debtors"), as debtors and debtors in possession and the

Official Committee of Unsecured Creditors of Enron Corp., et al. (the "Creditors'

Committee"), seeking entry of an order pursuant to sections 105(a), 502(c) and 503(b)(1)

of title 11 of the United States Code (the "Bankruptcy Code") for (i) estimation of claims

of certain former employees arising from termination of employment and (ii) approval of

form and manner of notice and procedures for disputing estimation; and it appearing that

the Court has jurisdiction to consider the Joint Estimation Motion; and it appearing that

the relief requested in the Joint Estimation Motion is in the best interest of the Debtors,

their estates and creditors; and it appearing that due notice of the Joint Estimation Motion

---

[1]      Capitalized terms used but not defined in this Order shall have the meanings
ascribed to them in the Joint Estimation Motion.

has been given and no further notice need be given; and upon the proceedings before the

Court; and good and sufficient cause appearing;

IT IS HEREBY ORDERED THAT:

1.     The estimation of the Opt-Out Severance Claims and the

Additional Termination Claims shall be conducted in accordance with the following

procedures:

### Response Forms for Disputing Estimation of Claims

- Each Opt-Out Claimant must complete, sign, date and return by the Response Deadline (as defined below) a written response in the form annexed to the Joint Estimation Motion as Exhibit B (the "Response Form"), which will be sent to every Eligible Former Employee together with the summary notice described below.

- The completed Response Form must provide (i) a written statement setting forth facts and arguments supporting his or her Opt-Out Severance Claim and any Additional Termination Claims, (ii) a written statement of every reason he/she believes that the claim(s) asserted are entitled to priority payment under the Bankruptcy Code, and (iii) evidentiary support upon which such Opt-Out Claimant will rely at the Estimation Hearing (the "Evidentiary Support").

- Each Response Form must be sent, *so as to be received* by the following parties *no later than 30 days* after service of the Response Form (the "Response Deadline"), to the following (a) Enron Corp., 1400 Smith Street, Houston, Texas 77002-7361, Attention: Robert W. Jones; (b) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attention: Lawrence J. Baer, Esq., Attorneys for the Debtors; and (c) Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, New York 10005, Attention: Susheel Kirpalani, Esq., Attorneys for the Creditors' Committee.

- The failure of any Opt-Out Claimant to complete, sign, date and return a Response Form so as to be received on or before the Response Deadline would result in a determination by the Court that the aggregate of such Opt-Out Claimant's Opt-Out Severance Claim and Other Termination Claims is estimated for allowance purposes at the amount of Prior Payments already received by such Opt-Out Claimant.

### Time, Place, and Conduct of Estimation Hearing

- A hearing on the estimation of Opt-Out Severance Claims and Other Termination Claims (the "Estimation Hearing") shall be held no sooner than 5 days after the Response Deadline.  Prior to the Estimation Hearing, the Debtors and the Creditors'

Committee will file with the Court a summary of all claims asserted in Response Forms submitted by the Opt-Out Claimants including, at a minimum, all Opt-Out Severance Claims. Depending on the magnitude and identity of issues of such Opt-Out Severance Claims, the Court will restrict the number of representatives permitted to present argument on behalf of all similarly situated Opt-Out Claimants and will limit such argument to a maximum of 90 minutes. The Debtors and the Creditors' Committee will also be limited to one 90-minute period to present their arguments to similarly situated Opt-Out Claimants. Additional time may be allotted by the Court if necessary to resolve specific factual issues raised based on any discrepancies between the information contained in the Response Forms and the Debtors' books and records. Other parties in interest may be permitted to be heard at the Estimation Hearing in the Court's discretion.

- The Debtors and the Creditors' Committee reserve the right to seek adjournment, if time constraints exist, of the estimation of any Other Termination Claims asserted by the Opt-Out Claimants.

- The Estimation Hearing may be adjourned from time to time without further notice other than (i) an announcement in open court of the adjourned date or dates of the Estimation Hearing or an adjourned hearing, and (ii) posting such announcements on Enron's website, www.Enron.com.

2. Notice by (A) filing a summary notice in the form annexed to the Joint Estimation Motion as Exhibit A (the "Estimation Notice and Procedures") of this Joint Estimation Motion with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) (B) mailing the Estimation Notice and Procedures by first class mail deposited as soon as practicable after the date of entry of this Order authorizing the Estimation Procedures on (i) all Eligible Former Employees, (ii) the office

of the United States Trustee for the Southern District of New York, (iii) the attorneys for

JP Morgan Chase Bank, (iv) the attorneys for Citibank, (v) counsel to any other committee

appointed in the Debtors' chapter 11 cases, including the Employee Committee; and

(vi) any person, or counsel if retained, appointed pursuant to 28 U.S.C. § 1104, (C)

publishing the Estimation Notice and Procedures within at least fifteen (15) days prior to

the Estimation Hearing, in the Houston Chronicle, and (D) making the full Joint

Estimation Motion available on Enron's website at www.Enron.com, shall constitute good

and sufficient notice of the Joint Estimation Motion, Estimation Procedures and

Estimation Hearing.

 Dated:  New York, New York
             June __, 2002


                                    _____
                                    HONORABLE ARTHUR J. GONZALEZ,
                                    UNITED STATES BANKRUPTCY JUDGE