WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)
Melanie Gray (Pro Hac Vice)
Martin A. Sosland (MS 1769)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------- x
                                            :
**In re**                                   :   **Chapter 11**
                                            :
**ENRON CORP., et al.,**                    :   **Case No. 01-16034 (AJG)**
                                            :
            **Debtors.**                    :   **Jointly Administered**
------------------------------------------------------------- x

**MOTION OF ENRON CORP., ET AL. FOR ORDER, PURSUANT TO
SECTIONS 105(a), 363(b) AND 502(c) OF THE BANKRUPTCY CODE AND
FEDERAL RULES OF BANKRUPTCY PROCEDURE 3018, 7042, AND 9019,
(1) ESTABLISHING PROCEDURES TO ESTIMATE  DISPUTED,
UNLIQUIDATED, OR CONTINGENT CLAIMS, (2) ESTABLISHING
PROCEDURES TO ESTIMATE COUNTERCLAIMS,
(3) ESTABLISHING PROCEDURES TO COMPROMISE CLAIMS AND
COUNTERCLAIMS AND (4) FIXING NOTICE PROCEDURES
AND APPROVING FORM AND MANNER OF NOTICE**

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

Enron Corp. ("Enron") and its affiliated debtor entities, as debtors and

debtors in possession (collectively, the "Debtors"), file this motion for an order, pursuant

to sections 105(a), 363(b) and 502(c) of title 11 of the United States Code (the

"Bankruptcy Code") and Rules 3018, 7042 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), (i) establishing procedures to estimate disputed,

unliquidated or contingent claims, (ii) establishing procedures to estimate counterclaim,

(iii) establishing procedures to compromise claims and counterclaims, and (iv) fixing

notice procedures and approving form and manner of notice (the "Motion"), and

respectfully represent as follows:

## JURISDICTION

1.      This Court has jurisdiction to consider and determine this Motion

pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.  This matter is a core proceeding pursuant

to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§

1408 and 1409.

## BACKGROUND

2.      Commencing December 2, 2001 (the "Petition Date") and

periodically thereafter, the Debtors filed voluntary petitions for relief under chapter 11 of

the Bankruptcy Code.  The Debtors continue to be authorized to operate their businesses

and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been procedurally

consolidated for administrative purposes.

3.      On December 12, 2001 and March 29, 2002, in accordance with

section 1102 of the Bankruptcy Code, the United States Trustee for the Southern District

of New York appointed a statutory committee of unsecured creditors (the "Creditors'

Committee"), and an employment related-issues committee (the "Employee

Committee"), respectively, for the Debtors' chapter 11 cases.  The Creditors' Committee

and the Employee Committee have been reconstituted from time to time.

4.      On July 11, 2003, the Debtors filed their Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, as may be amended, (as may be amended, the "Plan") and a disclosure statement related thereto. The Debtors hope to achieve confirmation of the Plan, as the same may be amended, by the end of December 2003.

**Schedules and Bar Dates for Filing Proofs of Claim**

5.      By order, dated April 12, 2002, the Bankruptcy Court established (a) June 17, 2002 as the date the first fifty-one (51) filed Debtors were required to file their respective Statements of Financial Affairs and Schedule of Assets and Liabilities (collectively, the "Schedules") and (b) a period of 135 days after the filing of a voluntary petition for relief under the Bankruptcy Code as the date that Schedules should be filed for each of the other Debtors.  As a result, commencing on June 17, 2002 and periodically thereafter, Schedules have been filed.  To date, one hundred seventy-eight (178) Debtors have commenced chapter 11 cases and Schedules have been filed by all of the Debtors.

6.      By order, dated August 1, 2002 (the "Bar Date Order"), and pursuant to Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Bankruptcy Court (a) established October 15, 2002 as the deadline by which proofs of claim were to be filed as a condition to sharing in the estate in all the Debtors' chapter 11 cases for which Schedules had been filed as of such date and (b) established the setting of subsequent Bar Dates to be the last day of the month that is two (2) months after the date that Schedules are filed for each additional Debtor (the "Bar Date").  In accordance with the Bar Date Order, Bankruptcy Services LLC

("BSI"), the Court appointed claims and noticing agent, has mailed, and continues to mail, written notices of the respective Bar Dates ("Bar Date Notice") to, among others, all creditors listed on the Schedules. See e.g., Docket No. 6197 (Affidavit of Service by Bankruptcy Services LLC). Similarly, the Debtors have published, and continue to publish, notices with regard to the respective Bar Dates.

**Proofs of Claim filed in the Debtors' Chapter 11 Cases**

7.      As of the date hereof, over 23,000 proofs of claim have been filed against the Debtors with BSI. The Debtors have been conducting a comprehensive review and reconciliation of these claims. This process includes identifying particular categories of proofs of claim that may be subject to disallowance and expungement, reduction and allowance, or reclassification and allowance. To avoid possible improper recovery by claimants and to eliminate duplicative claims and the like, the Debtors have filed a series of omnibus objections to various categories of claims.[1] The nature of the claims filed in these cases, however, is such that the omnibus objection process will be unable to address a significant number of the total claims filed.

8.      The Debtors have divided the claims into approximately twenty-five (25) "buckets" or categories in an effort to facilitate the claims reconciliation process and to enhance the Debtors' ability to file omnibus objections to claims under the Bankruptcy Code. Upon review, the Debtors have determined that, while the Debtors will be able to reconcile or eliminate as duplicative approximately 17,000 to 19,000 claims through a more customary claims reconciliation and objection process, many of

---

[1] Pursuant to the ongoing objection process, as of the date hereof, 2,805 claims have been expunged resulting in a reduction of in excess of $102.7 billion in claimed amounts. Additional objections are pending which will reduce claimed amounts in excess of $35 billion.

the remaining 4,000 to 6,000 claims are unliquidated, contingent or filed in amounts as to which the Debtors dispute (the "Claims"). The Debtors submit that, absent the mandate of section 502(c) of the Bankruptcy Code to estimate claims whose resolution would unduly delay administration of the estates, the full scale litigation of these claims will consume a <u>minimum</u> of 150,000 judicial hours, (ten (10) hours per claim for hearing and decision), leading to delays of years and expenditures of hundreds of millions of dollars.[2]

**<u>Debtors' Claims Against Creditors</u>**

9.  As noted above, certain of the Claims relate to trading related contracts, the assertion of respective termination or rejection dates, and alternative methods of calculation of damages. A number of such Claimants, as defined below, have asserted Claims where the Debtors contend these contracts were, in fact, "in-the-money" (including accounts receivable) for the Debtors, and not the Claimants, and that the Debtors are entitled to an affirmative recovery as a result of the termination or rejection. In other instances, although a Claimant may have a valid Claim against a particular Debtor, the Claimant may owe that same Debtor or other Debtors an amount that is not subject to setoff. In all of these instances, one or more of the Debtors may have counterclaims against the Claimants to collect the affirmative recovery due to the Debtors' estates (the "Counterclaims"). As with the Claims, the Debtors assert that (a) the most expeditious and efficient manner to resolve such differences is through the Claims Procedures, as defined below, and (b) in accordance with section 502(d) of the

---

[2] For example, if each of the 4,000 to 6,000 contingent or unliquidated claims took just 1 hour of time at a hearing before the Court, such a hearing would last for at least 167 (24 hour) days (including weekends and holidays). Likewise, assuming a blended hourly rate of $400.00, such hearings, together with an average of ten hours of preparation with respect each objection interposed, would cost the Debtors' estates from $17,600,000.00 to $26,400,000.00.

Bankruptcy Code, a Claimant should not be entitled to receive distributions on an allowed Claim until any Counterclaim asserted against it has been estimated and paid to the appropriate Debtor's estate. The administration of the Counterclaims will streamline the judicial process, save the estates' precious resources and, thereby, expedite more significant distributions to creditors.

**Claims Procedures**

10. The Debtors and their professionals have worked diligently to formulate a procedure to settle or estimate for distribution the claims at issue (the "Claims Procedures"). Such procedures are the result of numerous discussions among the Debtors, the Debtors' business department heads and senior management, and the Creditors' Committee to develop a method to resolve the Claims in an equitable, but economically efficient, manner. The Claims Procedures provide the Debtors and their creditors the opportunity to negotiate with each other to settle the Claims and the Counterclaims pursuant to Bankruptcy Court-approved procedures. If the Debtors and creditors are unable to agree to a settlement of a Claim, the Claims Procedures provide that all parties proceed to a hearing before the Bankruptcy Court and conduct such hearing in accordance with structured guidelines to estimate and allow Claims for all purposes. As described in more detail below, whenever possible, and pursuant to the Claims Procedures, the Debtors will categorize and resolve together similarly situated Claims filed by claimants in the Debtors' chapter 11 cases (the "Claimants")[3] and estimate such claims for distribution purposes. Without limiting the foregoing, the

---

[3] Debtors anticipate resolving together claims that involve "common questions of law or fact . . . pending before the court . . . to avoid unnecessary costs or delay" for purposes of estimation. *See* Fed. R. Civ. P. 42(a); *see also* Fed. R. Bankr. P. 7042.

Debtors propose that the estimation and settlement of the Claims and the Counterclaims and, if necessary, the prosecution and resolution of the Claims or Counterclaims, as the case may be, be conducted in accordance with the following procedures:

- **Debtors' Objection and Notice to Claimants**

Notice Package. The Debtors may object to Claims for the purposes of estimation (the "Estimation Objection")[4] and serve upon the respective Claimants, or their attorneys, if known, with a copy to the Creditors' Committee, (i) a notice of hearing for the Estimation Objection (the "Estimation Notice"), (ii) a copy of the relevant Estimation Objection, (iii) a form, substantially in the form annexed hereto as Exhibit "A", to be completed and verified by each Claimant and setting forth the elements and evidence to support such Claimant's Claim (the "Statement of Claim") and (iv) a copy of the Claims Procedures Order, substantially in the form annexed hereto as Exhibit "B", which Claims Procedure Order shall constitute the Court's Rule 16 Scheduling Order in the event the Debtors file a Counterclaim (collectively, the "Notice Package").

Service Upon Claimants. Service of the Notice Package shall be effectuated (a) in accordance with Bankruptcy Rules 2002 and 7004, Federal Rule of Civil Procedure 4 and this Court's Second Amended Case Management Order Establishing, Among Other Things, Noticing Electronic Procedures, Hearing Dates, Independent Website and Alternative Methods of Participation at Hearings, dated December 17, 2002 (the "Case Management Order), (b) to

---

[4] Contemporaneously with the filing of the Motion, the Debtors filed a Motion For Order, Pursuant to Sections 105(a), 502, 1125 and 1126 of The Bankruptcy Code and Rules 3003, 3017 and 3018 of The Federal Rules of Bankruptcy Procedures in Connection with the Plan Process and Temporary Allowance of Claims Procedures Related Thereto (the "Temporary Allowance Motion"). The Temporary Allowance Motion proposes certain guidelines and procedures for temporarily allowing claims for voting purposes only in connection with soliciting votes on the Plan. Under certain circumstances as set forth in the Temporary Allowance Motion, creditors must follow the procedures ordered by the Bankruptcy Court in connection with the Temporary Allowance Motion in order to have their claim temporarily allowed for purposes of voting on the Plan. These circumstances include, but are not limited to, if a creditor's claim is the subject of a pending objection. The Temporary Allowance Motion is on file with the Court and may be examined by interested parties by accessing the Court's Electronic Case Filing System which can be found at www.nysb.ucourts.gov, the official website for the Bankruptcy Court or the independent website www.elaw4enron.com established by the Case Management Order for posting of documents in the Debtors' cases.

the extent an attorney for a Claimant is unknown, by first class mail, postage prepaid, upon the signatory on the Claimant's proof of claim or other representative identified in the proof of claim and any attachment thereto, or (c) by first class mail, postage prepaid, on any attorney who has entered a notice of appearance and appeared on the Claimant's behalf in the Debtors' chapter 11 cases.

Estimation Notice.  The Estimation Notice shall (i) provide the Claimant one hundred thirty-five (135) days notice of the hearing on the Estimation Objection (the "Estimation Hearing") and (ii) direct the Claimant to complete and return the executed Statement of Claim within thirty (30) days after the date of the Estimation Notice.

- **Claimant's Response - Statement of Claim**

Statement of Claim.  Within thirty (30) days of the service date of the Estimation Notice, the Claimant shall complete, execute, and serve upon the Debtors, attorneys for the Debtors and attorneys for the Creditors' Committee (collectively, the "Estate Parties"), the Statement of Claim setting forth a detailed explanation, and, if appropriate, categorization by amount of such Claimant's Claim, not to exceed five (5) pages in length (including the Statement of Claim form), exclusive of documentary and statutory exhibits, including, without limitation, the elements and evidence in support of the Claim.  Any Statement of Claim that fails to specify an amount greater than $0.00 shall be deemed to be $0.00 for allowance and distribution purposes.  The Claimant's timely filed proof of claim form and all of the documents attached thereto shall remain part of the record for estimation purposes and should not be included in or attached to the Statement of Claim.

Default, Grace Period and Discharge.  The Claimant shall serve the Statement of Claim upon the Estate Parties in accordance with the terms of the Estimation Notice and the Case Management Order.  If a Claimant fails to return timely a completed and executed Statement of Claim, so as to be received on or before the thirtieth (30th) day following the date of the Estimation Notice, and receives a grace period notice from the Debtors and does not complete and return the Statement of Claim so as to be received by the Estate Parties on or prior to the fifteenth (15th) day following the date of such grace period notice, such

Claimant's Claim shall be deemed forever discharged, disallowed, waived and expunged against the Debtors and the Debtors' chapter 11 estates and the Bankruptcy Court shall enter an appropriate order in connection therewith.

• **Debtors' Reply - Statement of Position**

Statement of Position.  In the event that a Claimant timely serves a Statement of Claim, on or before the later to occur of (a) thirty (30) days following the Debtors' receipt of a Statement of Claim and (b) forty-five (45) days following the service of the Estimation Notice, the Debtors shall respond to the respective Statement of Claim by completing, executing, and serving upon the relevant Claimant, with a copy to the attorneys for the Creditors' Committee, a statement (the "Statement of Position") outlining the Debtors' arguments and defenses with respect to the Claim and the elements and evidence set forth in the Statement of Claim; provided, however, that, in the event that the Debtors maintain a Counterclaim with respect to a particular Claim and Claimant, the Debtors may also set forth in the Statement of Position the elements and verified statement of evidence supporting such Counterclaim.  The Debtors' Statement of Position shall not exceed five (5) pages in length, exclusive of documentary and statutory exhibits; provided, however, that such length shall be enlarged to ten (10) pages in the event that a Counterclaim is submitted by the Debtors in the Statement of Position.

Claimant's Response to Counterclaim.  In the event that the Debtors assert a Counterclaim, within twenty (20) days thereof, the Claimant shall respond to such Counterclaim by completing, executing and serving upon the Estate Parties a Statement of Position outlining the Claimant's argument and defenses with respect to the Counterclaims. The Claimant's Statement of Position shall not exceed five (5) pages in length, exclusive of documentary and statutory exhibits.

Settlement Offer.  At any time after receipt of a Statement of Claim, the Debtors (or the Claimant, if a Counterclaim is submitted) may offer, in writing (with a copy to the Creditors' Committee), to settle a particular Claim or Counterclaim, as the case may be (the "Settlement Offer"). Subject to the procedures set forth herein, the Debtors may make a Settlement Offer to any Claimant who timely

submits a completed and signed Statement of Claim which fulfills the requirements set forth above. Each Settlement Offer shall constitute statements made for settlement purposes only and, pursuant to Rule 408 of the Federal Rules of Evidence, shall be inadmissible in any proceeding with respect to the Claim or a Counterclaim.

Claimant's Acceptance of Settlement Offer. Each Claimant shall be required to accept or reject the Settlement Offer or submit in writing (with a copy to the Creditors' Committee), a counter-offer (a "Counteroffer") within ten (10) days after its mailing by the Debtors or the Claimant, as the case may be.

Acceptance or Rejection of Counteroffer. If a Counteroffer is tendered, the Debtors or Claimant shall be required to accept or reject the Counteroffer, in writing (with a copy to the Creditors' Committee) within ten (10) days of the service of the Counteroffer.

Creditors' Committee Involvement. The Debtors shall consult with, and provide periodic updates to, the Creditors' Committee on the number, size and nature of the Claims and on the Debtors' general plans to resolve the Claims. In the event that (1) a settlement provides for allowance of a Claim in an amount greater than One Hundred Million Dollars ($100,000,000.00), (2) a settlement constitutes twenty percent (20%) or more of the estimated total allowed Claims against a particular Debtor and more than One Million Dollars ($1,000,000.00), (3) a settlement (i) provides for allowance of a Claim in an amount greater than Twenty Million Dollars ($20,000,000.00) and (ii) constitutes more than one hundred five percent (105%) of the amount reflected on the Debtors' books and records or (4) a settlement provides for allowance of a Claim of an employee or insider in an amount greater than One Hundred Thousand Dollars ($100,000.00), then the Debtors shall obtain the consent of the Creditors' Committee prior to the acceptance or rejection of any such Settlement Offer or Counteroffer, and prior to filing any settlement stipulation (as defined below) in respect of such Settlement Offer or Counteroffer; provided, however, that in the case of De Minimis Settlements (as defined below), prior approval of the Creditors' Committee shall not be required and the procedures set forth below shall govern.

- **No Settlement Reached**

    Deemed Submission to Court.  If (1) a Claimant who has completed and signed a Statement of Claim rejects a Settlement Offer and refuses to make a Counteroffer, or (2) the Debtors reject a Claimant's Counteroffer, the Debtors shall compile and file with the Bankruptcy Court the Claimant's proof of claim, the Notice Package, the Estimation Objection, the Statement of Claim, and the Statement of Position (collectively, the "Claim File") for purposes of a hearing on estimation of the Claim pursuant to Estimation the Objection and in accordance with the Claims Procedures Order.

    Extension of Settlement Period.  Upon mutual written consent, the parties may exchange additional settlement offers following rejection of a Settlement Offer or a Counteroffer, as the case may be.

- **Estimation Hearing**

    Hearing.  An Estimation Hearing shall be held on the first omnibus hearing day ten (10) days after submission of the Claim File.

    Oral Argument.  Subject to the Bankruptcy Court's discretion to increase or decrease the hearing time, each party shall have fifteen (15) minutes to explain its position to the Bankruptcy Court.

    Evidentiary and Legal Record.  The evidentiary and legal record shall be confined to the Claim File; provided, however, that the Bankruptcy Court may allow or require additions to the record when necessary or appropriate.

    Resolution.  Upon the Bankruptcy Court's review of the evidentiary submissions and oral argument at the Estimation Hearing, the Bankruptcy Court shall estimate the relevant Claims and Counterclaims for all purposes.  In accordance with section 502(d) of the Bankruptcy Code, to the extent that the Bankruptcy Court allows a Claim and grants a Debtors' Counterclaim, the Claimant shall not receive any distribution on account of such Claim until the Claimant with respect thereto has fully paid the appropriate Debtor on account of the corresponding Counterclaim.

- **Entry of Settlement Stipulation**

De Minimis Settlements.  If the Debtors and a Claimant agree to a compromise and settlement of a Claim and, in connection therewith, an allowed claim equal to or less than Twenty Million Dollars ($20,000,000.00), where such settlement amount constitutes less than twenty percent (20%) of the estimated total allowed claims for the relevant Debtor, the Debtors shall file with the Clerk of the Bankruptcy Court and send to BSI, as Claims Agent, a stipulation setting forth such agreed upon amount (a "De Minimis Stipulation").  The De Minimis Stipulation shall become effective and binding upon all parties-in-interest upon its filing with the Clerk and shall not require the endorsement or approval of the Bankruptcy Court; provided, however, that, prior to the effective date of any joint chapter 11 plan for the Debtors, any De Minimis Stipulation shall be served upon attorneys for the Creditors' Committee ten (10) days prior to the submission to the Clerk of the Bankruptcy Court; and, provided further, that, in the event that the Creditors' Committee serves a written objection on the Debtors prior to the expiration of such ten-day period, the Debtors shall have the option of (y) withdrawing such De Minimis Stipulation and (z) treating such De Minimis Stipulation as a Settlement Stipulation, as defined below; and, provided, further, that, under no circumstances shall a De Minimis Stipulation provide for payment other than in accordance with the terms and conditions of a plan confirmed in the Debtors' chapter 11 cases in accordance with section 1129 of the Bankruptcy Code.

Court-Approved Settlements.  If the Debtors and a Claimant agree to a compromise and settlement of a Claim and, in connection therewith, an allowed claim in excess of Twenty Million Dollars ($20,000,000.00), the Debtors shall seek Bankruptcy Court approval of such compromise and settlement and corresponding stipulation and order (the "Settlement Stipulation") in accordance with the terms and conditions of the Case Management Order on ten (10) days' notice upon the Office of the United States Trustee and the Creditors' Committee.  If no objections to the Settlement Stipulation are timely filed, the Debtors shall submit an order approving the Settlement Stipulation without further notice or hearing.  If an objection is timely

interposed, the matter will be scheduled for hearing at the next omnibus hearing date; <u>provided</u>, <u>however</u>, that, under no circumstances, shall a Settlement Stipulation provide for payment other than in accordance with a confirmed plan in the Debtors' chapter 11 cases.  If the Bankruptcy Court does not approve the Stipulation Settlement, the Debtors, at their discretion, may elect to negotiate further with the Claimant or may deem settlement negotiations terminated and seek to estimate the Claim pursuant to the Estimation Procedures Order.

## RELIEF REQUESTED

11.     By this Motion, the Debtors seek authorization, pursuant to sections 105(a), 363(b) and 502(c) of the Bankruptcy Code and Bankruptcy Rules 3018, 7042 and 9019, to implement the Claims Procedures whereby the Bankruptcy Court shall estimate, for all purposes, claims filed in the Debtors' chapter 11 cases, inclusive of counterclaims in connection with trading contracts.  The Debtors also seek entry of an order fixing notice procedures in respect thereof and approving the form and manner of notice for the estimation and resolution of Claims and Counterclaims.

## GROUNDS FOR RELIEF

**Ample Authority Exists to
Establish the Claims Procedures**

12.     Section 502(c) of the Bankruptcy Code provides in pertinent part that "[t]here shall be estimated for purpose of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."  11 U.S.C. § 502(c).

13.     A court may authorize the estimation and approximation of the value of a claim using "whatever method is best suited to the circumstances" at issue and recognizing that absolute certainty is not possible.  <u>In re Brints Cotton Marketing, Inc.</u>,

737 F.2d 1338, 1341 (5th Cir. 1984). Although the court is bound by the legal rules that govern the ultimate value of the claim, it has wide discretion in establishing the method to be used to arrive at an estimate of the value of a claim or claims. Id.; Bittner v. Borne Chemical Co., 691 F.2d 134, 135 (3rd Cir. 1982) (estimation requires only "sufficient evidence on which to base a reasonable estimate of the claim"); In re Windsor Plumbing Supply Co., Inc., 170 B.R. 503, 521 (Bankr. E.D. N.Y 1994) (advocating use of probabilities in estimation of claims rather than more simplistic all or nothing approach); In re Baldwin-United Corp., 55 B.R. 885, 898-(Bankr. S.D. Ohio 1985) (estimation "does not require that a bankruptcy judge be clairvoyant").

14.     Bankruptcy courts have wide discretion in choosing the process for estimating a claim. The methods used by courts include summary trials (Baldwin, 55 B.R. at 899), a review of written submissions of proposed facts (Windsor, 170 B.R. at 517), and a review of the pleadings and briefs. In re Lane, 68 B.R. 609, 613 (Bankr. D. Hawaii 1986); see also, Baldwin, 55 B.R. at 898 (court estimated certain claims at $0 for purposes of allowance under 502(c) based on a prior opinion in Multi-District Litigation and a hearing on the merits of the claims); In re Zolner, 173 B.R. 629, 633 (Bankr. N.D. Ill. 1994) (estimation of union contract claims based upon testimony and arguments, in addition to briefing and submission of affidavits); In re Apex Oil Corp., 92 B.R. 843, 845 (Bankr. E.D. Mo. 1988) (applying summary trial brief on each claim subject to estimation). Whatever the procedure the bankruptcy court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." Bittner, 691 F.2d at 137 (citing 124 Cong. Rec. H 11101-H 11102 (daily ed. Sept. 28, 1978)). *See also*, In re Enron Corp. *et al.*, Docket No.

4737, Order (I) Approving Procedures for Disputing Estimation in Connection With Estimation of Claims of Certain Former Employees Arising from Termination of Employment and (II) Approving Form and Manner of Notice, dated June 24, 2002.

15.     Just as bankruptcy courts have wide discretion in choosing the process for estimating a claim, bankruptcy courts have similar latitude in determining the process for hearing any counterclaim.  Bankruptcy Rule 3007 provides that, whenever a claim for affirmative relief (*e.g.* a counterclaim) is included in an objection to a proof of claim, the objection is automatically converted to an adversary proceeding.  *See* FED. R. BANKR. P. 3007.  As an adversary proceeding, the Section VII rules apply to the objection and counterclaim, including Rule 7016 concerning pre-trial procedures.  *See* FED. R. BANKR. P. 7001, 7016.

16.     Bankruptcy Rule 7016 makes applicable Rule 16 of the Federal Rules of Civil Procedure.  Pursuant to Rule 16, trial courts have broad authority to enter orders to "provide for the prompt litigation and disposition of every adversary proceeding and to require strict adherence to the Scheduling Order."  *See In re Bonfiglio*, 231 B.R. 197, 198 (Bankr. S.D.N.Y. 1999).  Rule 16 is designed to give the trial court a "firm hand" with which it can control the litigation before it.  *See Campania Management Company v. Rooks, Pitts, & Poust*, 290 F.3d 843, 851-52 (7th Cir. 2002).  Rule 16 also gives the trial court the powers it needs to "achieve the orderly and expeditious disposition of cases."  *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-31 (1962); *Spain v. Board of Education*, 214 F.3d 925, 930 (7th Cir. 2000).  These powers include the ability of the trial court to conduct pre-trial conferences to force the litigants to refine the issues and particularize their claims.  *See Berkovitz v. Home Box Office, Inc.*, 89 F.3d

24, 28-29 (1st Cir. 1996).  If after conducting such pre-trial conferences the trial court is convinced that summary judgment is proper, the court is empowered to *sua sponte* dispose of those claims.  *Id.*  ("there is no reason to require that the elimination of non-trialworthy claims await a formal motion for summary judgment.")

      17.     Specifically, Rule 16 grants authority for trial courts to issue orders to:

      a.   Limit the time available for discovery and the types of discovery to be used (F.R.C.P. 16(b)(3), (c)(6));

      b.   Formulate and simplify the issues, including the elimination of frivolous claims or defenses (F.R.C.P. 16(c)(1)); *Berkowitz*, 89 F.3d at 28-29.

      c.   Avoid unnecessary proof and cumulative evidence and place limitations or restrictions on the use of expert testimony (F.R.C.P. 16(c)(4));

      d.   Examine the appropriateness of summary adjudication under Rule 56 (F.R.C.P. 16(c)(5));

      e.   Schedule the exchange of pre-trial briefs (F.R.C.P. 16(c)(7));

      f.   Employ special procedures to assist in resolving the dispute when authorized by statute or local rule (F.R.C.P. 16(c)(9)), including the use of mini-trials and summary trials, (1993 Notes of Advisory Committee to Rule 16, ¶ 10);

      g.   Establish limits on the time allowed for presenting evidence (F.R.C.P. 16(c)(15)); and

      h.   Facilitate in the "just, speedy, and inexpensive disposition of the action." (F.R.C.P. 16(c)(16).

      18.     Likewise, section 105 of the Bankruptcy Code grants bankruptcy courts wide latitude to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of [the Bankruptcy Code or] . . . making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). For example, the authority granted by F.R.C.P. 16 and § 105 permits a bankruptcy court to issue an order precluding contribution and indemnification claims against a settling defendant in an adversary proceeding brought by the chapter 11 debtor. *See In the Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996).

19. In light of the express authority granted in F.R.C.P. 16 and section 105 for Bankruptcy Courts to control the scheduling of cases, this Court should approve the proposed expedited procedures to minimize the prejudice that will result if Debtors are required to engage in traditional litigation to resolve the hundreds of Counterclaims they have in response to the thousands of Claims filed against them. The policy justification for such a procedure was aptly stated by The Honorable Adlai S. Hardin, Jr., United States Bankruptcy Court Judge for the Southern District of New York:

> Adversary proceedings in bankruptcy cases involve the interests of parties other than the plaintiff and defendant in the adversary proceeding. Delay in a lawsuit pending in a court other than the Bankruptcy Court may be agreed to by the parties and may prejudice no one other than the parties, but delay in most adversary proceedings affects all parties in interest in the bankruptcy case, not merely the parties to the adversary proceeding. To avoid delay, it is the policy of this Court, as mandated by Rule 16 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7016, to require a Scheduling Order providing for prompt litigation and disposition of every adversary proceeding and to require strict adherence to the Scheduling Order.

*In re Bonfiglio*, 231 B.R. at 198.

20. Moreover, Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may

approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.) 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. Id.; see also, 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall beneath the lowest point in the range of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at 505.

21.     Bankruptcy courts have applied the following factors in determining whether a settlement should be approved: (i) the probability of success in litigation, with due consideration for the uncertainty in fact and law; (ii) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (iii) the proportion of creditors who do not object to, or who affirmatively support the proposed settlement; and (iv) the extent to which the settlement is truly the product of arm's length bargaining and not the product of fraud or collusion. See, In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998); In re Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).

22.     Furthermore, pursuant to Bankruptcy Rule 9019(b), "[a]fter a hearing on such notice as the court may direct, the court may fix a class or classes of controversies and authorize the trustee to compromise or settle controversies within such class or classes without further hearing or notice." See, Fed. R. Bankr. P. 9019(b). A court may grant a debtors' request for an order dispensing with the standard notice and hearing provisions for entry of a stipulated settlement for a predetermined set or class of

claimants or controversies.  See, In re Check Reporting Services, Inc., 137 B.R. 653, 657

(Bankr. W.D. Mich. 1992) (holding that entry of an order pursuant to Rule 9019(b)

precluded a trustee's argument that a failure to provide notice of a settlement and

opportunity for a hearing rendered the settlement void as a matter of bankruptcy law and

due process principles).

23.     Additionally, the Court's general equitable powers are codified in

section 105(a) of the Bankruptcy Code.  Section 105(a) empowers the Court to "issue any

order, process, or judgment that is necessary to carry out the provisions of this title."  In

light of the size of this historic case and the need for expeditious and equitable resolution

of the multitude of disputed, unliquidated, and contingent claims to facilitate

confirmation of a feasible plan, the exercise of the Court's broad powers under section

105(a) to carry out section 502(c) by approving these Claims Procedures is both

necessary and appropriate.

**Authorizing and Establishing the Claims Procedures
is in the Best Interests of the Debtors and their Estates**

24.     The Claims Procedures are fair and reasonable and cause exists to

justify the granting of the relief requested herein.  As described above, over 23,000

proofs of claim have been filed in the Debtors' chapter 11 cases, including 4,000 to 6,000

contingent, unliquidated and/or disputed claims.  The magnitude of the administration

required in respect of analyzing and resolving the Claims as well as the magnitude of

coordinating and organizing the task cannot be overstated.  The Claims Procedures

provide a streamlined method, utilizing estimation as permitted by the Bankruptcy Code,

to efficiently resolve the myriad of issues attendant to the estimation and resolution of contingent, unliquidated, and disputed claims.

25.     The Claims Procedures permit the Debtors and Claimants an opportunity to engage in systematic negotiations to attempt to reach a consensual settlement outside of the confines of a courtroom.  The Claims Procedures also provide guidelines for the Debtors and Claimants to bring unresolved Claims to the Court, and to prosecute and achieve a final resolution regarding the Claims in an equitable and efficient manner.  The Debtors submit that entry of an order authorizing and establishing the Claims Procedures is appropriate and is in the best interests of the Debtors, their creditors, and their estates.

**Meaningful Distributions Under a Plan Will be**
**<u>Substantially Delayed Without the Claims Procedures</u>**

26.     The Debtors submit that, with nearly a quarter of the approximately 23,000 proofs of claims filed as disputed, unliquidated, and contingent claims, any material near-term distribution under a chapter 11 plan will be unlikely, if not impossible, without the authorization and establishment of the Claims Procedures.  The Debtors are moving as rapidly and efficiently as possible on all fronts in these chapter 11 cases.  However, certain factual realities regarding a substantial number of Claims makes final resolution extraordinarily difficult particularly if constrained by typical claims litigation timeframes.  The Debtors have been and continue to work toward the resolution of all claims filed in their cases.  The Debtors have already initiated and conducted omnibus claims objection proceedings to begin to resolve a significant number of claims and filed a chapter 11 plan on July 11, 2003.  However, unless and until the

approximately 4,000 to 6,000 contingent, unliquidated, and/or disputed claims are substantially estimated and resolved, the Debtors will be unable to make meaningful near-term distributions under any chapter 11 plan.

**Absence of the Claims Procedures will
Unduly Burden the Debtors and Their Estates**

27.    The magnitude and complexity of the Claims filed against the Debtors rivals the magnitude and complexity of these chapter 11 cases themselves.  A significant number of Claims allege more than one basis for relief which the Debtors cannot efficiently address on a one-by-one basis.  Absent approval of the Claims Procedures, the Debtors and their estates will be unduly burdened by the massive undertaking required to administer and resolve the disputed, unliquidated, and contingent claims, many of which involve complex issues entangling intercompany relationships amongst both Debtors and non-debtors.

**Without the Claims Procedures, There Will
Be a Massive Burden on Judicial Resources**

28.    Likewise, the Claims Procedures will alleviate the massive burden being impressed upon judicial resources.  For example, pursuant to the Claims Procedures, the Debtors will have the ability to categorize and consolidate similarly situated claims, and compromise and settle Claims for which the Claimants and the Debtors, in coordination with the Creditors' Committee, have successfully negotiated a mutual resolution of the Claim without further hearing or notice.  If the Debtors are required to file a motion seeking Bankruptcy Court approval of a claim settlement and then must serve notice of that motion on all parties in interest and conduct a hearing in

connection therewith whenever the Debtors resolve a Claim, the demand on the Debtors' resources and the Bankruptcy Court's limited time will be considerable.

29.     It is important to note that the Claims Procedures do not preclude Claimants from exercising their rights to appear before the Bankruptcy Court for final resolution with respect to their Claims.  The Claims Procedures provide that, in the event the Debtors and Claimants are not able to reach an agreed settlement, parties may schedule a hearing before the Bankruptcy Court and then proceed under systematic, prescribed guidelines to ensure the efficient resolution of the Claims.  Lacking such Claim Procedures, litigation to resolve many of the claims would necessarily be complex and expensive.  Certain litigation would require extensive requests to the Bankruptcy Court to engage in discovery, including significant document production and numerous depositions, as well the attendant demand on the Bankruptcy Court's time to supervise and/or resolve disputes related thereto.  Moreover, with 4,000 to 6,000 contingent, unliquidated, and disputed claims at issue, the time required to conduct the proceedings before the Bankruptcy Court would appear interminable.

### NOTICE OF ESTIMATION PROCEDURES & HEARINGS

30.     The Debtors propose to give notice of the Claims Procedures and Estimation Hearings substantially in the form of the Notice Package reference above (A) by filing the Claims Procedures with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable

Document Format (PDF), Wordperfect or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), (B) by first class mail deposited as soon as practicable after the date of entry of the Claims Procedures Order and upon an Estimation Objection filed by the Debtors to (i) Claimants whose Claims are the subject of such Estimation Objection, (ii) the office of the United States Trustee for the Southern District of New York, (iii) the attorneys for the Creditors' Committee, (iv) the attorneys for JP Morgan Chase Bank, (v) the attorneys for Citibank,  and (vi) counsel to any committee appointed in the Debtors' chapter 11 cases, and (C) by publication of the Claims Procedures Order twice in the <u>Houston Chronicle</u> and once in <u>The New York Times</u> (National Edition) as soon as practicable after entry of such order by this Court.

31.     The Notice Package shall set forth, among other things, a description of the Claims Procedures.  The Debtors submit that such notice constitutes good and sufficient notice of the Claims Procedures and the Estimation Hearings to be held and that no further notice need be given.  Accordingly, the Debtors request that the Court approve the form and manner of notice set forth herein.

### CONCLUSION

32.     In this case, the establishment of procedures to estimate and resolve the Claims contemplated by this Motion is consistent with due process, and is fair, reasonable and necessary to minimize the cost and risks attendant with the volume of Claims and potential for lengthy litigation proceedings in these cases.  The issues and Claims to be estimated and settled pursuant to the Claims Procedures set forth herein are sufficiently similar in law and fact in most instances to permit a consolidated resolution of such Claims appropriate.  Moreover, the Debtors have designed a workable and

productive settlement mechanism into the Claims Procedures to ensure the lowest possible impact and cost to the Debtors and their estates, their creditors, and the Court. In light of the massive volume of Claims and urgent need to resolve such Claims in order to confirm and execute a feasible plan of reorganization in this case, the Debtors believe these estimation and settlement procedures as the most appropriate, efficient and equitable method of resolving and estimating the Claims. The alternative would result in an unwarranted expenditure of enormous amounts of time, effort and money to liquidate the Claims by way of burdensome litigation. The Debtors respectfully submit that the Bankruptcy Court's approval of the Claims Procedures will permit these chapter 11 cases to proceed in an orderly manner, and provide the most effective and efficient method to accomplish the statutory purpose in chapter 11 of speeding distributions to creditors. For all of the foregoing reasons, the Debtors submit that the Motion should be granted.

## RESERVATION OF RIGHTS

33.     The Debtors reserve their rights to seek, among other things, complete disallowance of Claims at any time during the pendency of this case by individual or omnibus objection.

## NOTICE

34.     No trustee has been appointed in these chapter 11 cases. Notice of this Motion has been given in accordance with the Case Management Order. The Debtors submit no other notice need be given.

## MEMORANDUM OF LAW

35.     Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because the authorities are cited herein, the Debtors respectfully

request that the Court waive the requirement that the Debtors file a separate memorandum of law in support of this Motion.

36.　　No previous motion for the relief sought herein has been made to this or any other Bankruptcy Court.

WHEREFORE the Debtors respectfully request that the Bankruptcy Court (a) approve the Claims Procedures and (b) fix notice procedures and approve form and manner of notice, and (c) provide the Debtors such other and further relief as is just.

Dated: New York, New York
　　　　August 28, 2003

By: /s/ Brian S. Rosen_____
　　Martin J. Bienenstock (MB 3001)
　　Brian S. Rosen (BR 0571)
　　Melanie Gray (Pro Hac Vice)
　　Martin A. Sosland (MS 1769)
　　WEIL, GOTSHAL & MANGES LLP
　　767 Fifth Avenue
　　New York, New York 10153
　　Telephone:  (212) 310-8000
　　Facsimile:  (212) 310-8007

　　ATTORNEYS FOR DEBTORS AND
　　DEBTORS IN POSSESSION

**Exhibit A**

## STATEMENT OF CLAIM

Please complete the following items and submit a maximum of five (5) pages (including this page) explaining the elements and evidence in support of the amount you are claiming.

| | |
|---|---|
| Claim number on docket | |
| Full legal name of claimant | |
| Name, address, and telephone number of legal counsel retained (if applicable) | |
| Amount claimed (this may differ from your filed claim) | |
| Brief description of the nature of the claim (additional detail to be included in pages attached per above) (see detail required below) | |
| Debtor against which claim is asserted (this may differ from your filed claim) | |

**Claimants should include the following information in the attached narrative outlining and justifying their claim against the Debtors:**

1. A detailed description of the factual and legal basis of the claim (including detailed description of the contract, breach, event, incident, relationship, etc. giving rise to the claim)
2. Time that the claim arose
3. Names, addresses, and contact information of all witnesses, affiants, or other persons involved with or having knowledge of the details surrounding the claim
4. Third parties implicated by the claim and/or named in litigation giving rise to the claim
5. A detailed description of the damages sought, including a calculation of and support for such damages that would sustain scrutiny in a court of law

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------- x
                                                              :
In re                                 :          **Chapter 11**
                                                              :
**ENRON CORP., et al.,**              :          **Case No. 01-16034 (AJG)**
                                                              :
                    **Debtors.**      :          **Jointly Administered**
------------------------------------------------------------- x

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b) AND 502(c) OF THE
BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY
PROCEDURE 3018, 7042, AND 9019, (1) ESTABLISHING PROCEDURES TO
ESTIMATE DISPUTED, UNLIQUIDATED, OR CONTINGENT CLAIMS,
(2) ESTABLISHING PROCEDURES TO ESTIMATE COUNTERCLAIMS,
(3) ESTABLISHING PROCEDURES TO COMPROMISE CLAIMS AND
COUNTERCLAIMS AND (4) FIXING NOTICE PROCEDURES
<u>AND APPROVING FORM AND MANNER OF NOTICE</u>**

Upon consideration of the motion, dated August 28, 2003,[1] filed by Enron

Corp. ("Enron") and certain of its affiliated debtor entities (collectively, the "Debtors"),

as debtors and debtors in possession, seeking entry of an order, pursuant to sections

105(a), 363(b) and 502(c) of the Bankruptcy Code and Rules 3018, 7043, and 9019 of the

Federal Rules of Bankruptcy Procedures, (i) establishing procedures to estimate and settle

disputed, unliquidated or contingent claims, (ii) establishing procedures to estimate

counterclaims, (iii) establishing procedures to compromise claims and counterclaims and

(iv) fixing notice procedures and approving form and manner of notice; and it appearing

that the Court has jurisdiction to consider the Motion; and it appearing that the relief

requested in the Motion is in the best interest of the Debtors, their estates and creditors;

------------------------

[1] Capitalized terms used but not defined in this Order shall have the meanings ascribed to them in the
Motion.

and it appearing that due notice of the Motion has been given and no further notice need

be given; and upon good and sufficient cause appearing;

IT IS HEREBY ORDERED THAT:

1.    The estimation and settlement of the Claims shall be conducted in accordance with the following procedures:

### Debtors' Objection and Notice to Claimants

Notice Package.  The Debtors may object to Claims for the purposes of estimation (the "Estimation Objection") and serve upon the respective Claimants, or their attorneys, if known, with a copy to the Creditors' Committee, (i) a notice of hearing for the Estimation Objection (the "Estimation Notice"), (ii) a copy of the relevant Estimation Objection, (iii) a form, substantially in the form annexed to the Motion as Exhibit "A", to be completed and verified by each Claimant and setting forth the elements and evidence to support such Claimant's Claim (the "Statement of Claim") and (iv) a copy of the Claims Procedures Order, substantially in the form annexed to the Motion as Exhibit "B", which Claims Procedure Order shall constitute the Court's Rule 16 Scheduling Order in the event the Debtors file a Counterclaim (collectively, the "Notice Package").

Service Upon Claimants.  Service of the Notice Package shall be effectuated (a) in accordance with Bankruptcy Rules 2002 and 7004, Federal Rule of Civil Procedure 4 and this Court's Second Amended Case Management Order Establishing, Among Other Things, Noticing Electronic Procedures, Hearing Dates, Independent Website and Alternative Methods of Participation at Hearings, dated December 17, 2002 (the "Case Management Order), (b) to the extent an attorney for a Claimant is unknown, by first class mail, postage prepaid, upon the signatory on the Claimant's proof of claim or other representative identified in the proof of claim and any attachment thereto, or (c) by first class mail, postage prepaid, on any attorney who has entered a notice of appearance and appeared on the Claimant's behalf in the Debtors' chapter 11 cases.

Estimation Notice.  The Estimation Notice shall (i) provide the Claimant one hundred thirty-five (135) days notice of the hearing on the Estimation Objection (the "Estimation

Hearing") and (ii) direct the Claimant to complete and return the executed Statement of Claim within thirty (30) days after the date of the Estimation Notice.

**Claimant's Response - Statement of Claim**

Statement of Claim. Within thirty (30) days of the service date of the Estimation Notice, the Claimant shall complete, execute, and serve upon the Debtors, attorneys for the Debtors and attorneys for the Creditors' Committee (collectively, the "Estate Parties"), the Statement of Claim setting forth a detailed explanation, and, if appropriate, categorization by amount of such Claimant's Claim, not to exceed five (5) pages in length (including the Statement of Claim form), exclusive of documentary and statutory exhibits, including, without limitation, the elements and evidence in support of the Claim. Any Statement of Claim that fails to specify an amount greater than $0.00 shall be deemed to be $0.00 for allowance and distribution purposes. The Claimant's timely filed proof of claim form and all of the documents attached thereto shall remain part of the record for estimation purposes and should <u>not</u> be included in or attached to the Statement of Claim.

Default, Grace Period and Discharge. The Claimant shall serve the Statement of Claim upon the Estate Parties in accordance with the terms of the Estimation Notice and the Case Management Order. If a Claimant fails to return timely a completed and executed Statement of Claim, so as to be received on or before the thirtieth (30th) day following the date of the Estimation Notice, and receives a grace period notice from the Debtors and does not complete and return the Statement of Claim so as to be received by the Estate Parties on or prior to the fifteenth (15th) day following the date of such grace period notice, such Claimant's Claim shall be deemed forever discharged, disallowed, waived and expunged against the Debtors and the Debtors' chapter 11 estates and the Bankruptcy Court shall enter an appropriate order in connection therewith.

**Debtors' Reply - Statement of Position**

Statement of Position. In the event that a Claimant timely serves a Statement of Claim, on or before the later to occur of (a) thirty (30) days following the Debtors' receipt of a Statement of Claim and (b) forty-five (45) days following

the service of the Estimation Notice, the Debtors shall respond to the respective Statement of Claim by completing, executing, and serving upon the relevant Claimant, with a copy to the attorneys for the Creditors' Committee, a statement (the "Statement of Position") outlining the Debtors' arguments and defenses with respect to the Claim and the elements and evidence set forth in the Statement of Claim; provided, however, that, in the event that the Debtors maintain a Counterclaim with respect to a particular Claim and Claimant, the Debtors may also set forth in the Statement of Position the elements and verified statement of evidence supporting such Counterclaim. The Debtors' Statement of Position shall not exceed five (5) pages in length, exclusive of documentary and statutory exhibits; provided, however, that such length shall be enlarged to ten (10) pages in the event that a Counterclaim is submitted by the Debtors in the Statement of Position.

Claimant's Response to Counterclaim. In the event that the Debtors assert a Counterclaim, within twenty (20) days thereof, the Claimant shall respond to such Counterclaim by completing, executing and serving upon the Estate Parties a Statement of Position outlining the Claimant's argument and defenses with respect to the Counterclaims. The Claimant's Statement of Position shall not exceed five (5) pages in length, exclusive of documentary and statutory exhibits.

Settlement Offer. At any time after receipt of a Statement of Claim, the Debtors (or the Claimant, if a Counterclaim is submitted) may offer, in writing (with a copy to the Creditors' Committee), to settle a particular Claim or Counterclaim, as the case may be (the "Settlement Offer"). Subject to the procedures set forth herein, the Debtors may make a Settlement Offer to any Claimant who timely submits a completed and signed Statement of Claim which fulfills the requirements set forth above. Each Settlement Offer shall constitute statements made for settlement purposes only and, pursuant to Rule 408 of the Federal Rules of Evidence, shall be inadmissible in any proceeding with respect to the Claim or a Counterclaim.

Claimant's Acceptance of Settlement Offer. Each Claimant shall be required to accept or reject the Settlement Offer or submit in writing(with a copy to the Creditors' Committee), a counter-offer (a "Counteroffer") within ten (10) days after

its mailing by the Debtors or the Claimant, as the case may be.

<u>Acceptance or Rejection of Counteroffer</u>. If a Counteroffer is tendered, the Debtors or Claimant shall be required to accept or reject the Counteroffer, in writing (with a copy to the Creditors' Committee) within ten (10) days of the service of the Counteroffer.

<u>Creditors' Committee Involvement</u>. The Debtors shall consult with, and provide periodic updates to, the Creditors' Committee on the number, size and nature of the Claims and on the Debtors' general plans to resolve the Claims. In the event that (1) a settlement provides for allowance of a Claim in an amount greater than One Hundred Million Dollars ($100,000,000.00), (2) a settlement constitutes twenty percent (20%) or more of the estimated total allowed Claims against a particular Debtor and more than One Million Dollars ($1,000,000.00), (3) a settlement (i) provides for allowance of a Claim in an amount greater than Twenty Million Dollars ($20,000,000.00) and (ii) constitutes more than one hundred five percent (105%) of the amount reflected on the Debtors' books and records or (4) a settlement provides for allowance of a Claim of an employee or insider in an amount greater than One Hundred Thousand Dollars ($100,000.00), then the Debtors shall obtain the consent of the Creditors' Committee prior to the acceptance or rejection of any such Settlement Offer or Counteroffer, and prior to filing any settlement stipulation (as defined below) in respect of such Settlement Offer or Counteroffer; <u>provided</u>, <u>however</u>, that in the case of De Minimis Settlements (as defined below), prior approval of the Creditors' Committee shall not be required and the procedures set forth below shall govern.

**No Settlement Reached**

<u>Deemed Submission to Court</u>. If (1) a Claimant who has completed and signed a Statement of Claim rejects a Settlement Offer and refuses to make a Counteroffer, or (2) the Debtors reject a Claimant's Counteroffer, the Debtors shall compile and file with the Bankruptcy Court the Claimant's proof of claim, the Notice Package, the Estimation Objection, the Statement of Claim, and the Statement of Position (collectively, the "Claim File") for

purposes of a hearing on estimation of the Claim pursuant to Estimation the Objection and in accordance with the Claims Procedures Order.

Extension of Settlement Period.  Upon mutual written consent, the parties may exchange additional settlement offers following rejection of a Settlement Offer or a Counteroffer, as the case may be.

## Estimation Hearing

Hearing.  An Estimation Hearing shall be held on the first omnibus hearing day ten (10) days after submission of the Claim File.

Oral Argument.  Subject to the Bankruptcy Court's discretion to increase or decrease the hearing time, each party shall have fifteen (15) minutes to explain its position to the Bankruptcy Court.

Evidentiary and Legal Record.  The evidentiary and legal record shall be confined to the Claim File; provided, however, that the Bankruptcy Court may allow or require additions to the record when necessary or appropriate.

Resolution.  Upon the Bankruptcy Court's review of the evidentiary submissions and oral argument at the Estimation Hearing, the Bankruptcy Court shall estimate the relevant Claims and Counterclaims for all purposes.  In accordance with section 502(d) of the Bankruptcy Code, to the extent that the Bankruptcy Court allows a Claim and grants a Debtors' Counterclaim, the Claimant shall not receive any distribution on account of such Claim until the Claimant with respect thereto has fully paid the appropriate Debtor on account of the corresponding Counterclaim.

## Entry of Settlement Stipulation

De Minimis Settlements.  If the Debtors and a Claimant agree to a compromise and settlement of a Claim and, in connection therewith, an allowed claim equal to or less than Twenty Million Dollars ($20,000,000.00), where such settlement amount constitutes less than twenty percent (20%) of the estimated total allowed claims for the relevant Debtor, the Debtors shall file with the Clerk of the Bankruptcy Court and send to BSI, as Claims Agent, a

stipulation setting forth such agreed upon amount (a "De Minimis Stipulation"). The De Minimis Stipulation shall become effective and binding upon all parties-in-interest upon its filing with the Clerk and shall not require the endorsement or approval of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that, prior to the effective date of any joint chapter 11 plan for the Debtors, any De Minimis Stipulation shall be served upon attorneys for the Creditors' Committee ten (10) days prior to the submission to the Clerk of the Bankruptcy Court; and, <u>provided</u> <u>further</u>, that, in the event that the Creditors' Committee serves a written objection on the Debtors prior to the expiration of such ten-day period, the Debtors shall have the option of (y) withdrawing such De Minimis Stipulation and (z) treating such De Minimis Stipulation as a Settlement Stipulation, as defined below; and, <u>provided</u>, <u>further</u>, that, under no circumstances shall a De Minimis Stipulation provide for payment other than in accordance with the terms and conditions of a plan confirmed in the Debtors' chapter 11 cases in accordance with section 1129 of the Bankruptcy Code.

<u>Court-Approved Settlements</u>. If the Debtors and a Claimant agree to a compromise and settlement of a Claim and, in connection therewith, an allowed claim in excess of Twenty Million Dollars ($20,000,000.00), the Debtors shall seek Bankruptcy Court approval of such compromise and settlement and corresponding stipulation and order (the "Settlement Stipulation") in accordance with the terms and conditions of the Case Management Order on ten (10) days' notice upon the Office of the United States Trustee and the Creditors' Committee. If no objections to the Settlement Stipulation are timely filed, the Debtors shall submit an order approving the Settlement Stipulation without further notice or hearing. If an objection is timely interposed, the matter will be scheduled for hearing at the next omnibus hearing date; provided, however, that, under no circumstances, shall a Settlement Stipulation provide for payment other than in accordance with a confirmed plan in the Debtors' chapter 11 cases. If the Bankruptcy Court does not approve the Stipulation Settlement, the Debtors, at their discretion, may elect to negotiate further with the Claimant or may deem settlement negotiations terminated and seek to estimate the Claim pursuant to the Estimation Procedures Order.

2.      Notice of the Claims Procedures and Estimation Hearings, substantially in the form of the Notice Package referenced in Motion, shall be affected (A) by filing the Claims Procedures with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court), by registered users of the Bankruptcy Court's case filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Wordperfect of any other Windows-based word processing format (with a hard copy delivered directly to Chambers), (B) by first class mail deposited as soon as practicable after the date of entry of the Claims Procedures Order and upon an Estimation Objection filed by the Debtors to (i) Claimants whose Claims are the subject of such Estimation Objection, (ii) the office of the United States Trustee for the Southern District of New York, (iii) the attorneys for the Creditors' Committee, (iv) the attorneys for JP Morgan Chase Bank, (v) the attorneys for Citibank, (vi) counsel to any other committee appointed in the Debtors' chapter 11 cases, and (vii) any person, or counsel if retained, appointed pursuant to 28 U.S.C. § 1104, and (C) by publication of the Claims Procedures Order twice in the <u>Houston Chronicle</u> and once in the nation edition of <u>The New York Times</u> as soon as practicable after entry of such order by this Court.

3.      The Statement of Claim, a copy of which is annexed to the Motion as Exhibit "A", is hereby approved.

4.      The relief granted herein is without prejudice to the rights of the Debtors to seek, among other things, complete disallowance of Claims at any time during the pendency of these chapter 11 cases by individual or omnibus objection.

Dated: New York, New York
        September ___, 2003

                                    _____
                                    HONORABLE ARTHUR J. GONZALEZ
                                    UNITED STATES BANKRUPTCY
                                    JUDGE