# EXHIBIT I

# LETTER OF SUPPORT BY THE CREDITORS' COMMITTEE

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF ENRON CORP., *ET AL.*, DEBTORS**
CHAPTER 11 CASE NO. 01-16034 (AJG) JOINTLY ADMINISTERED

c/o Milbank, Tweed, Hadley & M$^c$Cloy LLP
1 Chase Manhattan Plaza
New York, New York 10005

January 9, 2004

**TO:    UNSECURED CREDITORS OF ENRON CORP. AND ITS DIRECT AND INDIRECT DEBTOR SUBSIDIARIES**

---

The Official Committee of Unsecured Creditors (the "Creditors' Committee") of Enron Corp., *et al.*, debtors and debtors in possession (collectively, the "Debtors"), appointed pursuant to 11 U.S.C. § 1102, writes to advise you of our determinations as to the Fifth Amended Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the United States Bankruptcy Code, dated January 9, 2004 (the "Plan"). Any capitalized terms used but not defined herein have the meaning ascribed to such terms in the Plan.

> THE MEMBERS OF THE CREDITORS' COMMITTEE – WHICH INCLUDE SOME OF THE LARGEST CREDITORS OF NOT ONLY ENRON CORP. BUT ALSO SEVERAL OF ITS DEBTOR SUBSIDIARIES – REPRESENTING THE INTERESTS OF ALL UNSECURED CREDITORS OF THE DEBTORS, UNANIMOUSLY SUPPORT THE PLAN AND RECOMMEND THAT HOLDERS OF UNSECURED CLAIMS VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS SET FORTH ON THEIR BALLOTS. *Each Creditor must, however, make its own independent decision as to whether or not the Plan is acceptable to that Creditor before voting to accept or reject the Plan.*

**Formulation of Plan.** Since its formation on December 12, 2001, the Creditors' Committee has expended significant efforts investigating the acts, conduct, assets, liabilities, and financial condition of the Debtors, the operation of the Debtors' businesses (including the operations of non-Debtor subsidiaries) and the desirability of continuing such businesses, and numerous other matters relevant to the formulation of a joint chapter 11 plan for the Debtors. In addition, as set forth more fully in the Disclosure Statement accompanying the Plan, we have worked with the Debtors for more than a year to forge a global compromise of complex inter-estate disputes in order to formulate the Plan. We believe that the asset realization strategy and the global compromise embodied in the Plan will provide the greatest potential recovery for unsecured creditors of the Debtors as a whole because, among other things, the Plan: (a) maximizes value for Creditors by liquidating the assets of the Debtors or transferring the ownership of certain assets to Creditors, as appropriate, and by providing for the continued prosecution of numerous affirmative causes of action on behalf of the Debtors' estates; (b) resolves the issue of substantive consolidation of the Debtors and substantially all other potential

inter-estate disputes without expensive and time-consuming litigation; and (c) facilitates an orderly and expeditious distribution of value to Creditors holding Allowed Claims.

**Distributions.**  The Plan provides for the distribution of all of the potential value of the Debtors' assets to holders of Allowed Claims as expeditiously as possible (in the form of Cash, Plan Securities and, to the extent created, interests in the Remaining Asset Trusts, the Litigation Trust and the Special Litigation Trust) consistent with the overarching goal of maximizing recoveries.  The Debtors have advised us that Cash will constitute approximately two-thirds of the distributions to Creditors, and we have endeavored to ensure maximum liquidity for Creditors with respect to any non-Cash distributions.

**Global Compromise.**  As described in the Disclosure Statement, the Plan is premised upon a settlement, rather than litigation, of various inter-Debtor, Debtor-Creditor and inter-Creditor disputes.  This global settlement, which we believe fairly reflects the risks of litigation, will significantly reduce the duration of these Chapter 11 Cases and the expenses attendant to protracted disputes.  While a litigated outcome of the issues resolved by the Plan would necessarily differ from the result produced by the Plan, we believe that, if such issues were litigated to conclusion, these Chapter 11 Cases would be prolonged for, at a minimum, an additional year.  The cost, delay and uncertainty that would be generated by such inter-estate litigation would not, in our view, be in the best interests of the unsecured creditor body.  In that regard, it is important to bear in mind that the professional fees incurred in these Chapter 11 Cases, even without such estate-wide litigation, have been approximately $330 million per year.

**Post-Effective Date Administration.**  On the Effective Date of the Plan, the Debtors will appoint a new board of directors to oversee and administer the liquidation of their remaining assets and to work towards concluding these Chapter 11 Cases.  Prior to Confirmation, the Creditors' Committee will be consulted with respect to four of the five members (and the ENA Examiner will be consulted with respect to one of the five members) of the board of Reorganized ENE and, to the extent created, any boards of the Remaining Asset Trust and the Litigation Trust.  In addition, in the event the Special Litigation Trust is created, the Creditors' Committee will nominate all of the members of its governing board to oversee prosecution of certain claims and causes of action previously brought by the Creditors' Committee on behalf of the Debtors' estates against certain former insiders of the Debtors.

*The foregoing description summarizes only certain aspects of the settlement and compromise contained in the Plan and does not constitute any part of, and is not intended as a substitute for, the Disclosure Statement approved by the Court.  Creditors should read the Plan and the accompanying Disclosure Statement (including, without limitation, all of the risk factors set forth therein) in their entirety before voting on the Plan.*

The Debtors have provided you with a Ballot to vote to accept or reject the Plan. In order to have your vote counted, you must complete and return the Ballot in accordance with the procedure set forth therein and in the Disclosure Statement. PLEASE READ THE DIRECTIONS ON THE BALLOT CAREFULLY AND COMPLETE YOUR BALLOT IN ITS ENTIRETY BEFORE RETURNING IT TO THE DEBTORS' BALLOTING AGENT.

                THE OFFICIAL COMMITTEE OF UNSECURED
                CREDITORS OF ENRON CORP., *ET AL.*