WEIL, GOTSHAL & MANGES LLP
Attorneys for the Debtors
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)
Martin A. Sosland (Pro Hac Vice)
Melanie Gray (Pro Hac Vice)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re : Chapter 11
:
**ENRON CORP., et al.,** : Case No. 01-16034 (AJG)
:
: **Jointly Administered**
**Debtors.** :
------------------------------------------------------------x

**DEBTORS' VERIFIED SUPPLEMENTAL ESTIMATION OBJECTION
WITH RESPECT TO CLAIM NOS. 1408, 3497, 7536 AND 7537 FILED BY
EUELL ENERGY RESOURCES, INC., PURSUANT TO THE CLAIMS
ESTIMATION PROCEDURES (ESTIMATION OBJECTION NUMBER SEVEN)**

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE:

Enron Corp. ("Enron") and its affiliated debtors and debtors in possession (the "Debtors") file this supplemental objection (the "Estimation Objection") pursuant to section 502(c) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent:

**Jurisdiction**

1. This Court has subject matter jurisdiction to consider and determine this Objection pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

2. On January 9, 2004, the Debtors objected (the "Initial Objection") to claim numbers 1408, 3497, 7536 and 7537 (the "Euell Claims") filed by Euell Energy Resources, Inc. ("Euell").[1]

3. On February 18, 2004, this Court entered its Order, Pursuant to Sections 105(a), 363(b) and 502(c) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 3018, 7042, and 9019, (1) Establishing Procedures to Estimate Unliquidated and Contingent Claims, (2) Establishing Procedures to Estimate Counterclaims, (3) Establishing Procedures to Compromise Claims and Counterclaims and (4) Fixing Notice Procedures and Approving Form and Manner of Notice (the "Estimation Order").[2] This objection invokes the procedures (the "Estimation Procedures") contained in the Estimation Order.

**The Euell Claims**

4. On March 18, 2002, Euell filed claim 1408 against Enron in the amount of $24,550,000 based on a theory of breach of contract. On October 9, 2002, Euell filed claim 7537 to amend claim 1408 and add a theory of recovery based on fraudulent misrepresentation.

5. On September 3, 2002, Euell filed claim 3497 against Enron North America ("ENA") in the amount of $24,550,000 based on a theory of breach of contract. On October 9, 2002, Euell filed claim 7536 to amend claim 3497 and add a theory of recovery based on fraudulent misrepresentation.

---

[1] The Initial Objection is attached as <u>Exhibit A</u> and incorporated herein by reference. The claims were objected to in the Initial Objection on the basis of there being no amount due, insufficient documentation, and that claims 1408 and 3497 were duplicate claims.

[2] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in the Estimation Order.

6. Each of the Euell Claims (a) arises from exactly the same set of alleged facts, (b) asserts exactly the same amount of lost profit damages from those facts, and (c) is based on the same two legal theories – breach of contract and/or fraudulent misrepresentation.

7. Euell claims that it suffered damages because ENA and/or Enron[3] failed to procure a letter of credit, which according to Euell, caused Euell to forfeit its bid to purchase from and resell oil to the Department of Energy's ("DOE") Strategic Petroleum Reserve ("SPR").

8. Specifically, Euell alleges that:

   a. On October 2, 2000, Euell was awarded a contract by the DOE, under which Euell agreed to purchase a specified amount of oil from the SPR and sell back an equal amount plus ten (10) percent in one year (the "Transaction").

   b. To close the Transaction, Euell had to provide an irrevocable letter of credit before close of business October 10, 2000.

   c. With knowledge that Euell was a high bidder,[4] Renard D. Euell, Euell's president, contacted either Patrick Danaher ("Danaher") or John Nowlan ("Nowlan"), vice presidents in ENA's trading group, about participating in the Transaction by posting a letter of credit, agreeing to provide the replacement oil and sharing in the profit. One of these ENA vice presidents allegedly responded that ENA and/or Enron was interested in the Transaction and requested the bidding documentation from Euell.

   d. In an October 6, 2000 telephone call, Nowlan allegedly represented that ENA and/or Enron was opening the letter of credit, but Mr. Euell subsequently learned that ENA and/or Enron would not provide a letter of credit, stating that Euell should have known "there was no deal."

   e. Because ENA and/or Enron allegedly misrepresented its intention, or breached its alleged agreement, to post a letter of credit and participate

---

[3] As set forth below, there simply can be no claim against Enron, even on the facts as alleged by Euell.

[4] The Euell claim summaries indicate that when Euell made his "initial contact" with the Debtor (which was not with any officer, director or other individual with decision making authority, but rather with Kenneth Lay's secretary), he already knew he would be one of the top bidders.

in the Transaction, Euell was not able to close with the DOE and allegedly lost profits in the amount of $24,550,000.

9. The Debtors dispute these allegations for the following reasons, among others:

a. ENA (for whom Nowlan and Danaher worked) and not Enron would have engaged in this type of transaction, if there were a transaction at all.

b. In any event, neither ENA nor Enron accepted Euell's offer to participate in the Transaction.

c. No representation was made that a letter of credit was in place or that ENA or Enron would participate in the Transaction. In fact, Nowlan and Danaher told Mr. Euell that ENA was not prepared to enter into the Transaction.

d. At best, Euell and ENA entered into preliminary negotiations about a possible transaction, after Euell already had been awarded the contract.

e. As there is no writing memorializing any transaction, this alleged agreement violates the statute of frauds under Texas law.[5] TEX. BUS. AND COM. CODE § 2.201(a) (1967).

**Relief Requested**

10. The Euell Claims are unliquidated claims which, (a) fail to state a claim relief and (b) with respect to which any damages are so speculative that they must be valued at zero dollars. Accordingly, by this Objection, and in accordance with the Estimation Procedures, the Debtors seek entry of an order pursuant to section 502(c) of the Bankruptcy Code disallowing and expunging the Euell Claims or, in the alternative, estimating those claims at zero dollars for all purposes in these cases, including for distribution purposes.

---

[5] According to Euell's claim summaries, Euell faxed certain bid documents to Nowlan and Nowlan returned a "novation agreement" to Euell. Euell alleges that this novation agreement was then sent on to the DOE, whose contact person, Mr. Waggoner, advised Euell that the novation was acceptable. The novation agreement, however, was not directly related to the alleged letter of credit/oil repurchase agreement; if executed, the novation agreement would allow for Enron to be a direct signatory with the DOE. Euell further attaches an email from Danaher to Mr. Euell that lists types of crude oil fitting the DOE's specifications. Neither the email nor the approval of the novation agreement by the DOE alters the preliminary status of Enron's negotiations with Euell. Moreover, Euell has not established the status or authority of Mr. Waggoner and his relationship to the DOE and this SPR transaction.

**Application of Legal Theories and Facts In Support of Estimation**

A. The Euell Claims are Unliquidated and Subject to Estimation

11. The Euell Claims are based on breach of contract and fraudulent misrepresentation theories, for which potential damages (assuming liability) are not readily calculable. Accurately calculating lost profit or fraudulent misrepresentation damages requires more than just reference to an alleged (in this case, unwritten) contract or "simple computation." The Euell Claims, thus, are unliquidated for purposes of the Estimation Order. In re Mazzeo, 131 F.3d 295, 304 (2nd Cir. 1997) ("where the claim is determinable by reference to an agreement or by a simple computation" it is liquidated)(internal quotations omitted); In re Knight, 55 F.3d 231, 235 (7th Cir. 1995) (claims are unliquidated if damages cannot "readily be calculated.").

B. The Euell Claims should be disallowed or alternatively estimated at zero

12. The Euell Claims should be disallowed and expunged.[6] First, the claims against Enron should be expunged as Euell has failed to allege any fact that would support a claim that Enron was involved in a possible Transaction. Euell's contact, as alleged, was exclusively with ENA. Second, the claims against ENA should be disallowed and expunged. Euell has failed to demonstrate (and cannot demonstrate) that there was a contract between it and ENA. In Texas, contracts for oil must be in writing to be enforceable. See South Hampton Co. v. Stinnes Corp., 733 F.2d 1108, 1118 n. 13 (5th Cir. 1984) (citing TEX. BUS. & COMM. CODE ANN. § 2.201(a)). There is no writing here. Even if Euell could evade this requirement, Euell has failed to allege (and cannot allege) that a contract was formed. For example, there is no allegation that the essential terms of the contract were negotiated. In addition, there is no

---

[6] Claims 1408 (against Enron) and 3497 (against ENA) should be expunged as having been amended by claims 7537 and 7536, respectively.

allegation that ENA and Euell agreed on the sharing formula for any profit.  Third, Euell has failed to allege (and cannot allege) facts sufficient to sustain a claim for misrepresentation.  For example, where critical contractual terms were not agreed upon, Euell could not have relied on ENA's promise.[7]  More importantly, Euell bid on the oil from the SPR *before* even contacting ENA.  Thus, there can be no proximate relation between the alleged misrepresentation by ENA and any lost profits allegedly sustained.  Fourth, assuming there was a contract, Euell's lost profit damages are speculative and unsupported.[8]

## Conclusion

13. Under these circumstances, the Euell Claims must be disallowed or alternatively estimated at zero dollars for all purposes in these cases, including for the purpose of distribution.  See, Bittner v. Borne Chemical Co., 691 F.2d 134, 137 and 139 (3rd Cir. 1982) (approving bankruptcy court's estimation claims at zero where "chances of ultimately succeeding in the state court action are uncertain at best"); In re Thomas McKinnon Securities, Inc., 143 B.R. 612, 618-21 (Bankr. S.D.N.Y. 1992) (disallowing claim in its entirety under 502(c)(2) after assessing merits of claim and, finding that claimant failed to establish causes of action by a preponderance of evidence);  In re Corey, 892 F.2d 829, 834 (9th Cir. 1989); In re Frontier Airline, Inc., 137 B.R. 811, 814 (D. Colo. 1992) (noting that "there is nothing in the statutory language which indicates that the estimation must yield a positive value for the claim").

14. No separate memorandum of law has been submitted in support of this Estimation Objection in accordance with the terms of the Estimation Order.

---

[7] Of course, as set forth above, ENA in fact represented to Euell that there was no agreement.

[8] In any event, if Euell did lose profits of $24,550,000, those profits were only lost once and Euell is not entitled to 4 claims each in that amount.

WHEREFORE the Debtors respectfully request that this Court enter an order granting the relief requested herein, and such other and further relief as may be just.

Dated: New York, New York
August 23, 2004

By: /s/ Melanie Gray
Martin J. Bienenstock (MB 3001)
Brian S. Rosen (BR 0571)
Melanie Gray (Pro Hac Vice)
Martin A. Sosland (Pro Hac Vice)
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

**Verification/Declaration**

The undersigned is Chief Accounting Officer of Enron Corp. I have reviewed the foregoing Objection and declare, under the pains and penalties of perjury, that to the best of my knowledge, information and believe, based upon facts known personally to me or reported to me in the ordinary course of my duties at Enron, the facts alleged in the Estimation Objection that no contract was entered into by the Debtors are true.

Dated: Houston, Texas
August 23, 2004

/s/ Richard A. Lydecker
Richard A. Lydecker, Jr.
Enron Corp.
Four Houston Center
1221 Lamar, Suite 1600
Houston, TX 77010