| UNITED STATES BANKRUPTCY COURT | NOT FOR PUBLICATION |
| --- | --- |
| SOUTHERN DISTRICT OF NEW YORK | |

---

In re                                              : Chapter 11

ENRON CREDITORS RECOVERY       : Case No. 01-16034 (AJG)
CORP., *et. al.,*

       Reorganized Debtors.

---

# OPINION DENYING INDEPENDENT EXECUTRIX'S REQUEST
# FOR LEAVE TO FILE LATE PROOF OF CLAIM

**APPEARANCES**

K&L GATES LLP
Counsel to the Reorganized Debtors
70 W. Madison Street, Suite 3100
Chicago, Illinois 60602

    John S. Delnero, Esq.
    Matthew E. McClintock, Esq.

LYNN ANNE WRIGHT
Pro Se Creditor as Independent Executrix
for the Estate of Evelyn Rose Samaritan
P.O. Box 301288
Austin, Texas 78703-0022

ARTHUR J. GONZALEZ
United States Bankruptcy Judge

      Before the Court is the request of Lynn Anne Wright, as beneficiary and Independent

Executrix for the Estate of Evelyn Rose Samaritan, (the "Executrix" or "Claimant") for leave to

file late proofs of claim (the "Request") against Enron Creditors Recovery Corporation

("Enron") on account of "excusable neglect" pursuant to Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure ("Rule 9006(b)(1)").[1] The Claimant's proofs of claim filings dated January 26, 2009 (the "Claims") include accrued, unsecured claims based upon (1) $4,650 in employee benefit entitlements, and (2) 6,052 shares of common stock in Enron Corporation. Upon consideration of the pleadings and arguments of the parties, the Court finds that the Claimant may not file her Claims based on "excusable neglect."

## I. Jurisdiction

The Court has subject matter jurisdiction over this matter under sections 1334(b) and 157(a) of title 28 of the United States Code and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York. This is a core proceeding within the meaning of section 157(b)(2) of title 28 of the United States Code.

## II. Background

*A. General Procedural History*

Commencing December 2, 2001 (the "Petition Date"), Enron Corporation, Enron North America Corporation, and certain of Enron's direct and indirect subsidiaries (collectively, the "Debtors" or "Debtor," referencing a single entity) each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases were procedurally consolidated for administrative purposes. During the chapter 11 cases, the Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. On July 15, 2004, the

---

[1] Although the Claimant has not specified which Bankruptcy Rule she makes her Request pursuant to, the Court will construe this matter as a request made pursuant to FED. R. BANKR. 9006(b)(1), as it is the most applicable to the facts at bar.

Court entered an order confirming the Debtors' Supplemental Modified Fifth Amended Joint Plan of Affiliated Debtors (the "Plan") in these cases. The Plan became effective on November 17, 2004, and the Debtors emerged from chapter 11 as reorganized debtors (the "Reorganized Debtors"). Effective March 1, 2007, Enron changed its name to Enron Creditors Recovery Corporation. Thereafter, on April 4, 2007, an order was entered authorizing the change of the caption of the Reorganized Debtors' cases.[2]

The Debtors filed "Motion of the Debtors for an Order Pursuant to Bankruptcy Rules 2002(a)(7), 2002(l), and 3003(c)(3) Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Providing Notice Thereof" on July 31, 2002 (the "Bar Date Notice Request"). The Bar Date Notice Request provided the following provision: "To avoid confusion and facilitate the Claims reconciliation process, the Debtors request that all creditors . . . be required to file separate Proofs of Claim with respect to each alleged claim and against each Debtor." By order dated August 1, 2002 (the "Bar Date Order"), the Court set October 15, 2002, as the bar date (the "Bar Date") by which proofs of claim must be filed against certain Debtors and approved the Bar Date Notice Request "in all respects." The Bar Date Order further provided that any creditor who fails to file a proof of claim in accordance with the Bar Date Order by October 15, 2002, "shall be forever barred, estopped and enjoined from asserting such claim against such Debtor (or filing a proof of claim with respect thereto) . . . ." On August 10, 2002, the Debtors mailed, *inter alia*, the notice of the Bar Date to potential creditors of the Debtors (the "Bar Date Notice").

*B. The Claims*

---

[2] For convenience, hereinafter, all references to Enron signify either Enron, the Debtors, the reorganized debtors, or Enron Creditors Recovery Corp., as the context requires.

Prior to the petition date, Evelyn Rose Samaritan (the "Decedent") was an unsecured creditor of Enron. Upon receiving the Bar Date Notice, the Claimant maintains, the Decedent was gravely ill with pancreatic cancer and receiving hospice care at home. On account of her illness, the Claimant further maintains, the Decedent was unable to promptly submit her claims to this Court. The Decedent passed away on February 21, 2003. Thereafter, Coy O. Wright, Jr. (the "Executor") was appointed Independent Executor of the Decedent's estate. The Claimant argues, however, that on account of the Executor's "misapplication of funds, and/or embezzlement actions or accounting improprieties on behalf of the Estate" a timely proof of claim filing was further delayed. The Claimant's Response to Reorganized Debtors' Objections to Standard Proof of Claim Submitted (the "Response") further alleges that, during the Executor's tenure, the Executrix sought removal of the Executor through lengthy legal proceedings in the Texas probate court. On March 6, 2008, the Executor was removed, and the Executrix was installed as his successor. On January 26, 2009, the Executrix initiated this matter by filing the aforementioned proofs of claim on behalf of the Decedent's estate. Enron subsequently filed an Objection to the Claims, arguing, *inter alia*, that because the circumstances alleged by the Claimant do not constitute excusable neglect, the Claims should be expunged.

### III. Discussion

*A. Rule 9006(b)(1) and the Excusable Neglect Standard*

Bankruptcy Rule 3003(c)[3] allows the bankruptcy court to set a bar date beyond which proofs of claim may not be filed. *See In re Enron Creditors Recovery Corp.*, 370 B.R. 90, 94

---

[3] FED. R. BANKR. P. 3003(c)(3) provides, in pertinent part, that the "court shall fix and for cause shown may extend the time within which proofs of claim or interest may be filed . . . ."

(Bankr. S.D.N.Y. 2007). Pursuant to Rule 9006(b)(1),[4] however, a bankruptcy court may permit a late filing if the movant's failure to comply with an earlier deadline was the result of excusable neglect. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 382 (1993). Granting such a motion is within the discretion of the court. *See Enron Creditors*, 370 B.R. at 100; 10 COLLIER ON BANKRUPTCY ¶ 9006.06 (15th ed. rev. 2009). The imposition of the bar date is "critically important to the administration of a successful chapter 11 case for it is intended to be a mechanism providing the debtor and its creditors with finality." *Enron Creditors*, 370 B.R. at 94 (citations omitted). Moreover, it serves the "important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate and the general amount of the claims, a necessary step in achieving the goal of successful reorganization." *Id.* (quoting *In re Keene Corp.*, 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995) (quoting *First Fidelity Bank, N.A. v. Hooker Invs. Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 840 (2d Cir. 1991))).

In *Pioneer*, the seminal case interpreting the excusable neglect standard of Rule 9006(b)(1), the Supreme Court found that excusable neglect was not limited to situations in which the delay in filing is caused by circumstances beyond the movant's control. *Pioneer*, 507

---

[4] Rule 9006(b)(1) provides:

(b) Enlargement
    (1) In general
        Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1)

5

U.S. at 388.  Rather, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness . . . ."  *Id.*  Furthermore, the determination as to whether a claimant's untimely filing is excusable is an equitable one.  *Id.* at 395.  The factors to be considered include "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  *Id*.  However, all four factors need not favor the moving party.  *See In re XO Commc'ns, Inc*., 301 B.R. 782, 796 (Bankr. S.D.N.Y. 2003) (citing *Keene*, 188 B.R. at 909).  Courts instead should look for a "synergy of several factors that conspire to push the analysis one way or the other."  *Id.* (citing *In re 50-Off Stores, Inc*., 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998)).  The burden is on the claimant to prove that her proof of claim filing was untimely because of excusable neglect.  *Id*. at 795 (citing *In re Andover Togs, Inc*., 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999)).

The Second Circuit has taken a "hard line" in applying the *Pioneer* test.  *Midland Cogeneration Venture Ltd. P'ship v. Enron Corp. (In re Enron)*, 419 F.3d 115, 122 (2d Cir. 2005) (citing *Silivanch v. Celebrity Cruises, Inc*., 333 F.3d 355, 368 (2d Cir. 2003), cert. denied sub nom. *Essef Corp. v. Silivanch*, 540 U.S. 1105, (2004)); *see also In re Lynch*, 430 F.3d 600, 604 (2d Cir. 2005) (noting that subsequent Second Circuit jurisprudence added a "gloss" on *Pioneer*, applying a strict interpretation of the Supreme Court's excusable neglect standard).  While other courts have, for the most part, adopted a similar hard line in applying *Pioneer*, *see id*. at 123 (citing *Silivanch*, 333 F.3d at 370 (collecting cases)), some courts have applied a more flexible reading.  *See id.* at 124 *(*citing  *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004) (en

banc) (affirming the district court's finding of excusable neglect where an untimely notice of appeal filing was due to a paralegal's misreading of a clear rule governing deadlines for appeal); *In re Sacred Heart Hosp. of Norristown*, 186 B.R. 891, 895 (Bankr. E.D. Pa. 1995) ("[A] long and logically unjustified delay which nevertheless has no significant impact on the debtor's case should, in our view, often be deemed excusable.")).

In *Midland*, the Second Circuit observed that the length of the delay, the danger of prejudice, and the movant's good faith usually weigh in favor of the party seeking the extension. *Id*. Because of this, the reason for the delay, including whether it was in the reasonable control of the movant, has been the focus of the court. *Id*. at 122-23 (citing *Silivanch*, 333 F.3d at 367 n.7 ("The four *Pioneer* factors do not carry equal weight; the excuse given for the late filing must have the greatest import. While prejudice, length of delay, and good faith might have more relevance in a close case, the reason-for-delay factor will always be critical to the inquiry.") (citation and internal quotations omitted)). The "equities will rarely if ever favor a party who fails to follow the clear dictates of a court rule . . . ." *Id*. at 123 (citing *Silivanch*, 333 F.3d at 366-67). Accordingly, when a court rule is entirely clear, it is "expect[ed] that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Id*. (citing *Silivanch*, 333 F.3d at 366-67).

*Factor 1: Prejudice to the Debtor*

Although the *Pioneer* Court did not define "prejudice," subsequent jurisprudence has established several factors to be considered when determining the existence, and extent, of prejudice to the debtor. These factors include (1) "the size of the late claim in relation to the estate," (2) "whether a disclosure statement or plan of reorganization has been filed or confirmed

7

with knowledge of the existence of the claim," and (3) "the disruptive effect that the late filing would have on a plan close to completion or upon the economic model upon which the plan was formulated and negotiated." *Enron Creditors*, 370 B.R. at 101 (quoting *Keene*, 188 B.R. at 910).

Although the Claims are small in comparison to the size of Enron's estate,[5] they must be assessed in light of their cumulative effect. As the Second Circuit noted in *Midland* – and this Court emphasized in *Enron Creditors* – even if a claim is "negligible relative to the total size of Enron's bankruptcy, the more relevant question is whether allowing one such claim would lead to a mountain of such claims, which the bankruptcy court, having admitted the first claim, would be hard pressed to reject." *Midland*, 419 F.3d at 131-32 (internal citation and quotations omitted); *accord Enron Creditors*, 370 B.R. at 102 (citing *Keene* and noting that "the cumulative effect of allowing [the claim], when viewed at the time of the late-filed claim, may well have resulted in a flood of similar late-filed . . . claims, which would have disrupted the economic model upon which the plan was formulated and negotiated"). In addition to the cumulative effect of any late claims themselves, the legal fees the estate would incur in litigating these matters further support a finding of prejudice. *See Midland*, 419 F.3d at 130 (citing *Keene*, 188 B.R. at 913). For these reasons, the first factor of the prejudice analysis weighs in favor of Enron.

Because the Court confirmed the Debtors' plan of reorganization on July 15, 2004,[6] and the Claims were filed on January 26, 2009, providing no notice prior to that date, the second

---

[5] The Response requests the Court to allow (1) Executrix's and Estate's Standard Proof of Claim in the amount of $6,052.00, (2) Executrix's and Estate's Employee Proof of Claim in the amount of $4,650.00, and (3) such other and further relief to which Executrix and Estate may be justly entitled.
[6] The effective date of the Plan was November 17, 2004.

8

factor of the prejudice analysis weighs in favor of Enron.

Although Enron's chapter 11 proceedings, which are nearing closure after almost eight years of pendency, would not necessarily be prolonged by granting the relief sought as to the Claims, similar future claims of other potential claimants would likely lengthen these proceedings. Accordingly, the third, and final, factor of the prejudice analysis weighs in favor of Enron.

All three factors of the prejudice analysis outlined in *Keene* and *Enron Creditors* weigh in favor of Enron.

*Factor 2: The Length of the Delay and its Impact on Judicial Proceedings*

There is no bright-light rule governing when a delay in filing may be considered "substantial." *Id.* at 128 (noting that some courts have allowed claims filed as late as two years after the bar date, while other others have rejected claims filed a day late). However, the progression of Enron's chapter 11 proceeding provides insight into the matter. In *In re Enron*, 298 B.R. 513, 526 (Bankr. S.D.N.Y. 2003), *aff'd*, 419 F.3d 115, 122 (2d Cir. 2005), the Court found a delay period of more than six months after the bar date to be substantial, and weighed the length of delay factor in favor of Enron. This holding was affirmed by the Second Circuit, which proceeded to note additionally that "the lateness of a claim must be considered in the context of the proceeding as a whole." *Midland*, 419 F.3d at 128. The Court subsequently relied upon this guidance in its decision in *Enron Creditors*, 370 B.R. at 103, which found a 15-month delay in filing to be substantial. The factor was found in favor of Enron there as well. *Id.*

In the instant matter, the Claimant has requested the Court to allow proofs of claim filed more than six years past the Bar Date of October 15, 2002. Considering the Court's prior

9

holdings in Enron's proceeding, this delay period is substantial.  Accordingly, the length of delay factor weighs in favor of Enron.

*Factor 3: The Reason for the Delay*

A creditor must "explain the circumstances surrounding the delay in order to supply the Court with sufficient context to fully and adequately address the reason for delay factor and the ultimate determination of whether equities support the conclusion of excusable neglect." *Enron Creditors*, 370 B.R. at 103 (citing *Pioneer,* 507 U.S. at 388); *accord Enron*, 298 B.R. at 526 (citing *Pioneer* and noting the same).

Here, the Claimant advances two explanations in support of her contention that her tardiness is justified and excusable.  First, the decedent was gravely ill upon the lapse of the Bar Date.  Second, the Executor's "improprieties" further frustrated any efforts to complete a more prompt filing.

*Decedent's Illness*

Enron does not contest the filing delay extending from the bar date to the Decedent's death on February 21, 2003, during which she was gravely ill with pancreatic cancer and receiving domestic hospice care.  Delays in filing on account of illness have fallen within the ambit of excusable neglect as contemplated by various other federal rules.  *See U.S. v. Burnette*, 2007 U.S. Dist. LEXIS 4715, at *6 (E.D.N.Y. Jan. 22, 2007) ("A defendant's severe illness at the time of the default may be sufficient for a finding of "excusable neglect" under [FED. R. CIV. P. 60(b)(1)]⁷") (citing *Carcello v. TJX Companies, Inc.,* 192 F.R.D. 61, 64 (D. Conn. 2000) for the proposition that a court may consider a movant's severe illness in determining whether a default

---

[7] *Pioneer*'s interpretation of "excusable neglect" applies to FED. R. CIV. P. 60(b)(1).  *See Canfield v. Van Atta Buick/GMC Truck, Inc*., 127 F.3d 248, 250 (2d Cir. 1997) (citations omitted).

judgment can be vacated on the grounds of excusable neglect)); *cf. U.S. v. Dabney*, 393 F. Supp. 529, 552 (D. Pa. 1975) (citing 9 MOORE'S FEDERAL PRACTICE ¶ 204.19, and holding that "the sudden illness of counsel is clearly a circumstance covered by the 'excusable neglect' provision of [FED R. APP P. 4]").

For these reasons, the period from October 15, 2002 to February 21, 2003, and a reasonable time thereafter, fall within the excusable neglect provision of Rule 9006(b)(1).

*The Executor's Conduct*

While *Pioneer* is often cited for the aforementioned proposition regarding the excusable neglect standard, and its accompanying equitable considerations, the decision also stands for the proposition that clients must be held accountable for the acts – and omissions – of their chosen counsel.[8] *Pioneer*, 507 U.S. at 396. In *Pioneer*, the Supreme Court noted that to find the petitioner not bound by the acts and omissions of its freely selected agent would be "wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id*. at 397 (citations and quotations omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986) ("[A]n attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment."); *cf. In re Critical Care Support Servs.*, 236 B.R. 137, 143 (E.D.N.Y. 1999) (citing *United States v. 7108*

---

[8] The Court notes that applicable nonbankruptcy law governing decedents' estates commands the same analysis. Under Texas law, the removal of a personal representative of a decedent's estate strips him or her of the authority to do anything further with respect to the estate's administration. *See* 28 TEX. JUR. 3D *Decedents' Estates* § 350 (2009). However, except where the Texas Probate Code provides otherwise, the acts of a representative prior to removal are valid, even if they are done after the cause for removal arises. *See id*. (citing *Holman v. Houston Oil Co.*, 152 S.W. 885, 893 (Tex. Civ. App. 1912)); *cf.* RESTATEMENT (SECOND) OF JUDGMENTS § 41 (1982) (noting that a person who is not a party to an action but is represented by the executor of an interest of which the person is a beneficiary is bound by and entitled to the benefits of a judgment as though he were a party).

*West Grand Ave.,* 15 F.3d 632, 633 (7th Cir.1994) for the proposition that "[m]alpractice, gross or otherwise, may be a good reason to recover from a lawyer but does not justify prolonging litigation against the original adversary").

In *XO Commc'ns*, this Court addressed an issue arising from fairly analogous facts. There, a claimant's unsecured claim estate representative was appointed to pursue, *inter alia*, section 547 preference actions. *XO Commc'ns*, 301 B.R. at 800. The representative was thus the movant in that matter. *Id.* However, although the representative did not cause the untimely filing (she was not appointed until after the bar date), she was effectively the successor in interest to the claimant's rights to pursue avoidance actions. *Id.* at 798. There was thus no reason to distinguish the actions of the representative from those of the claimant. *Id.* Accordingly, the Court focused upon the claimant's – not the representative's – actions and knowledge when assessing the reason for delay factor. *Id.* The Court concluded that the reason for delay factor weighed in favor of the debtor because the claimant was aware that it possessed preference claims and its failure to inquire about the potential recovery of the large claim in question was unreasonable.[9] *Id.* at 799-800. Moreover, it was "within the reasonable control of [the claimant] to file a timely claim, but it opted to forego such a filing until after confirmation of its [own reorganization] plan and thereby assumed the reasonably foreseeable consequences of such a determination." *Id.* at 799.

---

[9] The Court noted that it was "highly suspect" that the claimant or its bankruptcy counsel remained completely unaware of the debtor's bankruptcy filing because (1) claimant and the debtor were in the same distressed industry, (2) the debtor's bankruptcy case was of enormous size and garnered extensive media coverage, (3) the claimant's sophisticated bankruptcy counsel was likely aware of the debtor's case, (4) the bar date notice was published in the national edition of a widely-read publication that the debtor's bankruptcy counsel likely would have read, and (5) both the claimant and the debtor's bankruptcy proceedings were being held in the same courthouse. *XO Commc'ns*, 301 B.R. at 799.

As the Executrix serves as personal representative of the Decedent's estate, the same logic should control the facts of the instant matter. In assessing the reason for delay factor, the Executor's – not the (subsequent) Executrix's – actions and knowledge must be considered. The Executrix has failed to present evidence supporting a meaningful reason for delay on behalf of the Executor. The Court notes that although the Claims are not large in the context of the Enron case, they are not insignificant from the standpoint of the Decedent's estate – such that the Executor should have been aware of them.

For these reasons, the Decedent's estate is bound by the Executor's unjustified failure to submit a timely proof of claim. Accordingly, this factor weighs in favor of Enron.

*Factor 4: Good Faith*

As previously noted, for the purposes of a *Pioneer* analysis, a successor in interest must assume the actions and knowledge of her predecessor. *See XO Commc'ns*, 301 B.R. at 798-800 ("[T]he [movant] is effectively the successor in interest to [the claimant's] rights to pursue avoidance actions and there is no reason to distinguish the actions of the [movant] from those of the [claimant]."). In *XO Commc'ns*, the Court applied this logic in its analysis of the good faith factor to find that the claimant, and thus the movant, failed to establish its burden that it acted in good faith. *Id.* at 800. Accordingly, in the instant matter, the Court looks to the good faith of the Executor.

There is nothing in the record to sustain the Executrix's burden that the Executor acted in good faith. Moreover, the facts alleged in the Response support a contrary conclusion – that the Executor engaged in "misapplication of funds, and/or embezzlement actions or accounting improprieties on behalf of the Estate." The Response does not allege that either the Decedent or

13

the Executor failed to receive proper notice of the Bar Date. Furthermore, the lengthy delay in itself is indicative of bad faith. *See In re J.S. II, L.L.C.*, 397 B.R. 383, 389 (Bankr. N.D. Ill. 2008) (finding that claimant's inaction during the pendency of the timeline for filing a claim against the debtors did not constitute good faith); *see also In re Infiltrator Sys., Inc.*, 241 B.R. 278, 281 (Bankr. D. Conn. 1999) ("The length of the delay . . . is significant primarily insofar as it may disrupt the judicial administration of the case or show lack of good faith on the part of the movant.").

Accordingly, the good faith factor weighs in favor of Enron.

### IV. Conclusion

Having considered the factors articulated in *Pioneer,* and further developed in subsequent Second Circuit jurisprudence, including *Midland*, the Court concludes that relief sought pursuant to Rule 9006(b)(1) is not warranted here. Therefore, Enron's objection to the Claims is sustained. The Claims are expunged. The Request is denied in all respects.

Accordingly, for the foregoing reasons, it is hereby

ORDERED that the Request for leave to file late proofs of claim is denied; and it is hereby further

ORDERED that the Claims are expunged.

Dated: New York, New York
      August 4, 2009

                                          **s/Arthur J. Gonzalez**
                                          ARTHUR J. GONZALEZ
                                          UNITED STATES BANKRUPTCY JUDGE