UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————

Nº 09 Civ. 4168 (RJS)

———————

IN RE ENRON CREDITORS RECOVERY CORP., *ET AL.*

NATIONAL CITY BANK,

Appellant,

VERSUS

ENRON CREDITORS RECOVERY CORP., *ET AL.*,

Appellees.

———————

MEMORANDUM AND ORDER
March 31, 2011

———————

RICHARD J. SULLIVAN, District Judge:

Appellant National City Bank, as indenture trustee and property trustee, appeals the March 25, 2009 Order of the Honorable Arthur J. Gonzalez, Bankruptcy Judge (the "March 2009 Order"), which denied Appellant's motion for an order to enforce a stipulation between Appellant and Appellees Enron Creditors Recovery Corp., *et al.*, Debtors. For the reasons set forth below, the March 2009 Order is affirmed.

I. BACKGROUND[1]

On December 2, 2001, Enron Corp. ("Enron") and certain affiliated entities (collectively, the "Enron Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Since that date, more than 150 Enron-affiliated entities filed voluntary petitions for relief under the Bankruptcy Code. These petitions were procedurally consolidated for administrative purposes. National City Bank ("NCB"), pursuant to certain agreements, is the Property Trustee for two Enron trusts and the Indenture Trustee for certain debentures.

---

[1] The facts are undisputed unless otherwise noted.

On July 11, 2003, the Enron Debtors filed their Joint Plan of Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Initial Plan"). In the months that followed, the Enron Debtors and NCB agreed on a stipulation that resolved a variety of issues concerning NCB's claims under the joint plan. (Stipulation and Order of October 2, 2003 (the "October Stipulation").) Among other things, the October Stipulation contained a Most Favored Nation clause (the "MFN Clause") to insure that no other creditor received a greater percentage of recovery under the reorganization plan than NCB would receive. The clause provided, in part, that:

> In the event *the Debtors agree to pay, or pay*, to any class of unsecured nonpriority claims of any Debtor (including ENE Guaranty Claims as a separate class, but not including Portland General Holdings, Inc. and Portland Transition Company, Inc.) a higher percentage recovery than [NCB is] to receive under the Second Amended Plan pursuant to this Stipulation and Order, the percentage recovery paid to [NCB] shall automatically increase to the same percentage recovery . . . .

(October Stipulation ¶ 16 (emphasis added).)

Elsewhere in the document, the October Stipulation defined "Debtors" as Enron Corp. "and its affiliated debtor entities (collectively, the 'Debtors')." (October Stipulation ¶ C.)

After the Enron Debtors filed an amended plan of reorganization (the "Second Amended Plan") on November 13, 2003, NCB moved to modify the plan to include the MFN Clause from the October Stipulation. (NCB's Motion for an Order, December 12, 2003 ¶ 28.) The Enron Debtors promptly objected to the motion. On January 8, 2004, NCB and the Enron Debtors announced a settlement on the record at a hearing held by the Bankruptcy Court. (*See* H'rg of January 8, 2004 Tr. 38:14-17 (the "Settlement H'rg").) The settlement resolved "all disputes as to what the Debtors . . . were obligated to do in order to satisfy the [October] [S]tipulation" (*id.* 40:21-24), presumably meaning that the MFN clause would be incorporated into any final plan.

On March 4, 2004, the Enron Debtors made a motion seeking permission to sell off their ownership interests and related assets in three affiliated entities – Enron India Holdings Ltd., Enron Mauritius Company, and Offshore Power Production C.V. (together, the "Dabhol Debtors") – for $20 million. As part of that motion, the Enron Debtors also sought permission to release the Dabhol Debtors from the Enron Debtors' Chapter 11 cases. Neither NCB nor anyone else objected to the motion, which was approved by the Bankruptcy Court on April 8, 2004. (Order of April 8, 2004 (the "Dabhol Order").)

As part of the sale of the Dabhol Debtors, the Enron Debtors realized a payment of $20 million. In addition, the Dabhol Order provided that the Dabhol Debtors were no longer owned by or affiliated with the Enron Debtors, and that their Chapter 11 cases were no longer consolidated with those of the Enron Debtors. In fact, the Dabhol Debtors were themselves consolidated for administrative purposes and given a new case number in the Bankruptcy Court. The Dabhol Debtors also retained separate counsel.

On June 1, 2004, the Enron Debtors filed their Fifth Amended Plan, which was supplemented on July 2, 2004. Consistent with the agreement reached in January, the Fifth Amended Plan references the MFN Clause in paragraph 34.6 (the "MFN Preservation Clause"), providing, in part, that:

> On the Effective Date, . . . *subject to the Debtors' obligations set forth in decretal paragraph 16 of the [October] Stipulation and herein*, . . . ENE, as general partner of EPF I and EPF II, shall (1) waive any right of EPF I and EPF II to reinvest distributions made pursuant to the Plan, (2) liquidate the Eligible Debt Securities, as defined in the EPF I Partnership Agreement and the EPF II Partnership Agreement, owned by EPF I and EPF II to Cash as soon as practicable following the Effective Date and (3) declare a distribution of all assets of EPF I and EPF II, . . . to ECT I and ECT II, respectively, which distribution shall be made to National City Bank . . . .

(Fifth Amended Plan ¶ 34.6 (emphasis added).)

The Fifth Amended Plan was confirmed, without objection, on July 15, 2004. As with the October Stipulation, "Debtors" is a defined term in the Fifth Amended Plan; however, unlike the October Stipulation, the definition in the Fifth Amended Plan specifically includes all of the Enron Debtors that were proponents of the Plan. These entities – approximately 180 in all – are in turn identified by name in the document. (Fifth Amended Plan ¶ 1.77.) Not surprisingly, the Dabhol Debtors are not included among the Debtors. In fact, the Fifth Amended Plan expressly provides that the Dabhol Debtors have been "removed as Debtors and Proponents of the Plan." (Fifth Amended Plan ¶ 7.9.)[2]

On January 14, 2005, after confirmation of the Fifth Amended Plan, NCB filed a Request for Payment of Administrative Expenses in connection with the Fifth Amended Plan, citing the MFN clause. As part of that request, NCB asserted for the first time that "it is at least possible that one or more of [the Dabhol] Debtors will pay or agree to pay a higher percentage distribution to their unsecured nonpriority creditors than is provided for under the October Stipulation or the Plan." (NCB Response of June 17, 2005 ¶¶ 27-29.)

The Enron Debtors objected to the request, and although a hearing on the request and the objection was scheduled for July 2005, it was consensually adjourned for almost two years. In the interim, the Dabhol Debtors filed their own plan of reorganization (the "Dabhol Plan"), which was confirmed by the Bankruptcy Court on November 16, 2005. As part of the Plan, the Dabhol Debtors agreed to pay two unsecured creditors the full amount of their claim in cash.

On June 27, 2007, the Enron Debtors finally filed a reply to the NCB request,

---

[2] The full paragraph reads:

> Dabhol Debtors Removal: Pursuant to the Bankruptcy Court's order, dated April 8, 2004, and the notice, dated May 17, 2004 in connection therewith, (a) a majority of the equity interests of Enron Mauritius Company, Enron India Holdings Ltd. and Offshore Power Production C.V. were sold, (b) such entities were, among other things, removed as Debtors and Proponents of the Plan and (c) Classes 58, 59 and 60 of the Plan have been rendered inoperative.

(Fifth Amended Plan ¶ 7.9.)

3

arguing that the Dabhol Debtors' reorganization action and payment of claims did not, and could not, trigger the MFN Clause because they were no longer "Debtors" under the definition in the Confirmed Plan. (Reorganized Debtors' Reply of June 27, 2007 ¶ 20.) On July 26, 2007, the Bankruptcy Court held a hearing, at which it denied the Administrative Expense Request to the extent it applied to the triggering of the MFN clause. (Hr'g of July 26, 2007 Tr. 8:1-3.) The Bankruptcy Court determined that the Request was procedurally improper and suggested that NCB file a motion to enforce the October Stipulation. (*Id.* 3:11-22, 7:16-17.)

More than 18 months later, on February 13, 2009, NCB followed the Bankruptcy Court's suggestion and filed a motion seeking entry of an order enforcing the MFN Clause in light of the payments made by the Dabhol Debtors to two of its unsecured creditors. (NCB Motion of February 13, 2009 ¶ 60.)

On March 25, 2009, the Bankruptcy Court denied NCB's motion. (March 2009 Order.) The Bankruptcy Court determined that "the plain meaning of the Most Favored Nation clause requires that the collective Debtors pay or agree to pay." (*Id.*, Ex. A, at 2.) The Court found that, while the Dabhol Debtors were "Debtors" at the time of the October Stipulation, the Dabhol Debtors had been completely separated from the cases of the Enron Debtors before they paid the unsecured creditors. (*Id.*) Because "the [Enron Debtors] lost all control over the Dabhol entities and could not have agreed to the payments made under [the Dabhol] plan," the Bankruptcy Court determined that the "collective Debtors" did not agree to pay, or pay, the Dabhol creditors. (*Id.* at 4.)

NCB now appeals the Bankruptcy Court's order.

II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(1), district courts are vested with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. A district court evaluates a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). Where, as here, the Bankruptcy Court's decision involved the interpretation of a plan of reorganization, the decision is subject to *de novo* review. *See In re Duplan Corp.*, 212 F.3d 144, 151 (2d Cir. 2000) ("The Bankruptcy Court's interpretation of the text of the Plan, the Confirmation Order, and the Final Decree are conclusions of law reviewed de novo.").

III. DISCUSSION

After careful review of the Fifth Amended Plan, the October Stipulation, and the record, the Court finds that NCB is not entitled to any additional expenses or recovery and affirms the Bankruptcy Court's decision.

"A stipulation and order is a binding agreement between parties to a dispute which has been so ordered by the presiding court. When parties enter into a stipulation, the agreement is enforceable as a contract." *In re Royster Co.*, 132 B.R. 684, 687 (Bankr. S.D.N.Y. 1991); *see also In re Napolitano*, NO. 07-73361-478, 2008 WL 5401541, at *3 (Bankr. E.D.N.Y. Dec 23, 2008). Nevertheless, a confirmed plan is also binding on all the parties, 11 U.S.C. § 1141(a), and "acts like a contract." *Adelphia Recovery Trust v. Bank of Am., N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008)

4

(quoting *In re Sunbrite Cleaners*, 284 B.R. 336 (N.D.N.Y. 2002)).

Since the construction of the text of a contract is a legal question, it is reviewed *de novo*. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 51 (2d Cir. 2011). "Under New York law whether the language of a contract is unambiguous and, if so, what construction is proper are legal questions . . . subject to *de novo* review." *Seiden Assocs v. ANC Holdings*, 959 F.2d 425, 429 (2d Cir. 1992) (citations omitted).

"[P]rinciples of state law govern the interpretation of contractual provisions in bankruptcy." *In re Delta Air Lines, Inc.*, 608 F.3d 139, 146 (2d Cir. 2010) (citing *Butner v. United States*, 440 U.S. 48 (1979)). Under New York law, the "fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent." *Id.* (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)); *see also Innophos, Inc. v. Rhodia, S.A.*, 10 N.Y.3d 25, 29 (2008). The best evidence of the parties' intent is the contract itself. *Delta Air Lines*, 608 F.3d at 146; *see also Innophos*, 10 N.Y.3d at 29. Where a contract is "clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (internal quotation marks and citation omitted); *see also Capital Ventures Int'l v. Verenium Corp.*, No. 09 Civ. 4261 (GBD), 2011 WL 70227, at *4 (S.D.N.Y. Jan 04, 2011). Contract terms are not ambiguous if "they 'have a definite and precise meaning and are not reasonably susceptible to differing interpretations.'" *RJE Corp.*, 329 F.3d at 314 (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993)). "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Law Debenture Trust Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)); *see also Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("[N]o ambiguity exists where the alternative construction would be unreasonable."). Thus, a court should not find a contract ambiguous "where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning." *Law Debenture*, 595 F.3d at 467 (internal quotation marks, alteration, and citation omitted).

As an initial matter, the Court finds that the Fifth Amended Plan supersedes the October Stipulation. *See In re Landy,* 189 B.R. 342, 347 (Bankr. E.D. Pa. 1995) (finding that stipulation "terminated by operation of law upon confirmation of the [a]mended [p]lan"); *In re Valley Park Group,* 96 B.R. 16, 24 (Bankr. N.D.N.Y. 1989) ("Confirmation of the plan marks the beginning of the reorganized debtors's new financial life. New legal relationships are established and old ones are modified or terminated."). Therefore, the Court will interpret the language of the MFN Clause as incorporated into the Fifth Amended Plan.

Applying basic contract principles to the Fifth Amended Plan, the Court finds that document to be wholly unambiguous. As noted above, the Fifth Amended Plan clearly describes the Debtors' obligations, subject to conditions previously "set forth in decretal paragraph 16" of the October Stipulation. (Fifth Amended Plan ¶ 34.6). The Plan

could not be more explicit, and does not endorse, adopt, or otherwise reference *any other* provision of the October Stipulation, including the definition of "Debtors" contained in paragraph C of that document. By thus limiting itself to "decretal paragraph 16" of the October Stipulation, the Plan clearly contemplates that the term "Debtors" would be subject to the *Plan's* definition of that term and not the earlier definition set forth in paragraph C of the October Stipulation. As previously explained, the Fifth Amended Plan defines "Debtors" as those entities that were proponents of the Fifth Amended Plan, and proceeds to list all 180 such entities by name. In addition to the fact that none of the Dabhol Debtors are listed among the 180 named entities, the Fifth Amended Plan goes on to explicitly state that the Dabhol Debtors have been "removed as Debtors and Proponents of the Plan." (Fifth Amended Plan ¶ 7.9.) Accordingly, the Fifth Amended Plan is unambiguous as to the definition of the Debtors, and any attempt to regraft the definition of "Debtors" from paragraph C of the October Stipulation into the Plan is contrary to the plain language of that document.

Since "Debtors" are defined to exclude the Dabhol Debtors, and since "decretal paragraph 16" of the October Stipulation is only triggered upon "the Debtors['] agree[ment] to pay" a "higher percentage recovery" to "any class of unsecured nonpriority claims of any Debtor," the Court finds that Appellant is not entitled to any additional distribution under the Plan. Appellant's arguments to the contrary would require the Court to stretch the plain language of the Fifth Amended Plan – which solely references "decretal paragraph 16" of the October Stipulation – to include a definitional paragraph, Paragraph C, that is nowhere mentioned in the Plan. Had the parties intended such a result, they clearly could have written the Amendment to do so by subjecting the Debtors' obligations to "decretal paragraph 16, *and definitional paragraph* C." They did not. *See Lodges 743 & 1746, Int'l Assoc. of Machinists & Aerospace Workers v. United Aircraft Corp.*, 534 F.2d 422, 441 (2d Cir. 1975) ("'[A] reference by the contracting parties to an extraneous writing for a particular purpose makes it part of their agreement only for the purpose specified.'" (quoting *Guerini Stone Co. v. P. J. Carlin Constr. Co.*, 240 U.S. 264, 277 (1916))).

Moreover, even if it could be argued that "decretal paragraph 16" implicitly adopted the broad definition of "Debtors" set forth in definitional paragraph C of the October Stipulation, the Court agrees with the Bankruptcy Court's conclusion that decretal paragraph 16 requires "collective action" by the Debtors, something which did not happen here. As noted above, decretal paragraph 16 provides that: "In the event *the Debtors agree to pay, or pay*, to any class of unsecured nonpriority claims of any Debtor . . . a higher percentage recovery than [NCB is] to receive under the Second Amended Plan . . . the percentage recovery paid to [NCB] shall automatically increase to the same percentage recovery." As the plain language attests, any increased recovery by Appellants is premised on "the Debtors" agreeing to pay a higher percentage recovery to a particular class of creditors. However, the "Debtors" did no such thing in this case. Rather, the Dabhol Debtors – a select group which had been "removed as Debtors and proponents of the Plan" (Fifth Amended Plan ¶ 7.9) – agreed to pay two unsecured creditors the full amount of their claim as part of a separately negotiated and approved reorganization plan. The Enron Debtors had nothing to do with that reorganization, and cannot be said

6

to have "agreed" to the payment of a higher percentage to the Dabhol creditors.

In arguing that the Enron Debtors had an obligation to match the payments subsequently approved by the Dabhol Debtors, Appellants in essence ask the Court to ignore the plain language of paragraph 16 – which is triggered "[i]n the event *the Debtors* agree to pay" a higher percentage recovery to a third party – in favor of a broader, non-textual interpretation that would entitle NCB to higher benefits "in the event *any Debtor, as defined in paragraph C of the October Stipulation,* agrees to pay" a higher percentage recovery to a class of unsecured nonpriority clams. The Court declines to modify the plan in this way, again noting that the parties were free to negotiate such language had they so wished.

Given the plain meaning of the documents in question, the Court finds that the actions of the Dabhol Debtors had no bearing on the obligations of the Enron Debtors, and that Appellants are not entitled to any additional expenses or recovery pursuant to the MFN Clause of the Fifth Amended Plan.

IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's March 2009 Order. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: March 31, 2011
       New York, New York

\* \* \*

Appellant is represented by Edward M. Fox of K&L Gates LLP, 599 Lexington Avenue, New York, New York 10022-6030. Appellees are represented by James Andrew Bulger and Matthew Scott Barr of Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/31/11